EGBERT, EXECUTOR, ET AL. *v.* EGBERT ET AL.

[No. 13,351.   Filed October 1, 1929.]

*Ira M. Sharp,* for appellants.
*Dodson & Scifres,* for appellees.

McMahan, C. J.—This is an action by Austin and

William Egbert, appellees in this court, to contest the will of their mother, Agnes N. Halpin. The complaint charges that when the will and codicil thereto were executed, the testatrix was of unsound mind; that they were unduly executed; that they were executed by reason of fraud, duress and undue influence. The defendants George E. and Robert A. Egbert are also sons of the testatrix, the other defendants being grandchildren. Trial by jury resulted in a verdict and judgment for the plaintiffs.

The error assigned is the overruling of appellants' motion for a new trial. The specific contentions are that the verdict is not sustained by sufficient evidence, error in giving instructions 4, 5, 20 and 21 given by the court on its own motion, and instructions 1 and 2 given at request of appellees.

After the introduction of the evidence and before the argument to the jury, all of the grounds of contest except unsoundness of mind were dismissed and withdrawn, so that the only question finally given to the jury for its consideration related to the mental capacity of the decedent.

The will in question is dated August 15, 1923, and the codicil, July 7, 1924. At the time of her death, April 9, 1925, Mrs. Halpin was 84 years old. She suffered an injury six or seven years before her death, and, from that time to her death, was not able to walk without the aid of crutches. A number of witnesses testified concerning their acquaintance with her, telling what they saw and observed, and of their conversations with her, and basing their opinions on what they had detailed, said that, in their opinions, she was of unsound mind when the will and codicil were executed. Other witnesses, basing their opinion on what they saw and on conversations they had with her, said she was of sound mind. Whether she was of sound or

unsound mind was a question for the jury, and the evidence is sufficient to sustain the verdict.

The court, in instruction 2, informed the jury as to what the complaint charged, and told the jury that the complaint, among other things, alleged that at the time of the execution of the will and codicil Mrs. Halpin was of unsound mind; that the will and codicil were unduly executed; that they were executed under duress; that they were obtained by fraud; and that their execution was brought about by the threats and undue influence of George E. Egbert. In instruction 4, of which complaint is made, the court named the five grounds of contest mentioned in the complaint, after which he told the jury that, in order to find for the plaintiff, it would not have to find that each and every one of such causes had been established by a preponderance of the evidence; that if it found any one of said causes had been established by a preponderance, it would be sufficient. In instruction 5, the court specifically instructed the jury that there was no evidence to establish the second, third, fourth and fifth grounds of contest; that those causes for contest had been withdrawn; and that the only ground of contest left for consideration was whether Mrs. Halpin was of unsound mind at the time of the execution of the will and codicil. In instruction 6, the court again told the jury that the only ground of contest was unsoundness of mind, and that, unless the jury found that it had been established by a preponderance of the evidence that she was of unsound mind and incapable of executing a will, their verdict should be for the defendants.

There was no evidence tending to prove any ground of contest other than unsoundness of mind, and the jury was clearly informed that, although other grounds of contest had been alleged in the complaint, they had all been withdrawn except that of unsoundness of mind, and that plaintiffs could not recover unless

they proved unsoundness of mind by a preponderance of the evidence. Instruction 4 is subject to criticism and should not have been given, but it does not amount to reversible error in view of the evidence and the other instructions given. Appellants certainly have no just cause for complaining of instruction 5, wherein the court told the jury that all causes and reasons alleged in the complaint for contesting the will had been withdrawn except the one alleging unsoundness of mind, and that the issue left was the one relating to unsoundness of mind.

The court's instruction 20 is to the effect that there is no law requiring a person to will her property or any part of it to the natural objects of her bounty; that, if of sound mind; she has a right to disregard the natural objects of her bounty and give her property to other persons or institutions, but if, in making a will, she disregards the natural objects of her bounty, the jury has a right to consider that fact along with other facts in the case in determining whether she knew who were the natural objects of her bounty, and whether or not she was of sound or unsound mind. There is no merit in the contention that this instruction is not applicable to the evidence or is contradictory in terms.

Instruction 21 is to the effect that if a person of sound mind and free from any undue influence makes a declaration as to how she intends to dispose of her property, and afterwards executes a will in harmony with or not in harmony with such statement, the statement so made is competent evidence on the question of soundness of mind, the weight of such evidence being for the jury.

Appellants contend the giving of this instruction was error because the only witnesses who testified to any such statements were parties to the action or their consorts, all of whom were incompetent to testify to any matter that occurred in the lifetime of the testatrix, except for

the purpose of expressing an opinion as to her mental condition, and that the testimony as to such statements was limited to that purpose.

The lawyer who drafted the will and his stenographer both testified to statements made by the testatrix as to how she intended to dispose of her property. The testimony of these witnesses was not limited to the one subject. The declarations as testified to by these witnesses were in harmony with the provisions of the will and were admissible to sustain it. *Ditton* v. *Hart* (1911), 175 Ind. 181, 93 N. E. 961. If any of those who testified as to such statements was not competent to testify as to such statements, except for the purpose of expressing an opinion based thereon as to the mental condition of the testatrix, the court doubtless would have so instructed the jury if a proper request to that effect had been made. There is no available error in the giving of this instruction.

In instruction 1, given at the request of appellees, the jury was told it was the law that an unnatural disposition of property by a testator might be considered in determining mental capacity. The only objection urged against this instruction is that it assumes there was an unnatural disposition of property, thereby invading the province of the jury. We do not think it is subject to this objection.

In appellees' instruction 2, the jury was told that if the testatrix stated in the will that Austin Egbert, one of the devisees under the will, was indebted to her and her son George in a named sum, when, as a matter of fact, he was not indebted to them or either of them in any sum, the jury might consider that fact along with other facts in determining mental capacity. In support of the contention that the court erred in giving this instruction, appellants say the question as to whether Austin owed his mother was not in issue, and

that there was no evidence that he did not owe her. In Item 6 of the will, the testatrix stated that Austin was indebted to herself and George in the sum of $880 for taxes and costs paid by George at the time the Shaw farm was purchased from Austin, and which amount should have been paid by him. It also stated that the testatrix and George were sureties for Austin on a certain note, and directed that, in case either of them as sureties was compelled to pay such note, Austin should receive no part of the estate unless he paid the $880 and whatever amount the sureties were required to pay on the note. Austin was a witness for appellees. On direct examination, he testified to certain facts and circumstances, and, on the strength thereof, gave it as his opinion that his mother was of unsound mind. He gave no testimony in his direct examination concerning the statement in the will about his owing his mother the $880 or any other sums. Appellants, however, on cross-examination asked him about a $700 note which his mother and Robert had signed with him, and also about another note which they had also signed. In this connection, he said his mother talked with him about these two notes, and he said he had paid nothing on the $700 note. On re-direct examination, he, without objection, testified that his mother never said anything to him about his owing her on account of the Shaw deal. Clyde Walker testified that he prepared the deed by which Austin conveyed the Shaw farm to his mother and George; that the consideration of this deed was the payment and assumption by the grantees of certain debts then owing by Austin, that the amount of such debts was ascertained, and that there was a balance due Austin, for which George gave Austin his check; and that, some time thereafter, there was some talk about a ditch assessment. George Egbert testified as a witness for himself and the other defendants, and, in so doing, he testified

at great length concerning the family affairs, and the business relations existing between him and Austin. His testimony was not confined to what he had seen his mother do, what he had heard her say, or what he had observed of her, from which to express an opinion as to her mental capacity  Over the objections of appellees, he testified in general concerning the transfer of the Shaw farm from Austin to the witness and his mother. He said that, when this conveyance was made, there was a balance of $500 due Austin for which the witness gave Austin a check. He testified in general to facts tending to show that Austin was indebted to his mother, the amount of such indebtedness, according to his testimony, being $800 or more. In view of the wide range of this testimony, and of the fact that the first evidence elicited on the subject was brought out by appellants, they cannot complain of the instruction now under consideration.

No reversible error being shown, the judgment is affirmed.