ALLMAN ET AL. *v.* MALSBURY ET AL.

[No. 28,143. Filed February 25, 1946. Rehearing denied April 2, 1946.]

*Rhodes & Rhodes* and *H. K. Cuthbertson*, all of Peru, for appellants.

*Russell J. Wildman* and *Albert H. Cole*, both of Peru, for appellees.

O'MALLEY, J.—The appellants commenced this action to contest and set aside the probate of the will of John J. Miller. The grounds asserted were unsoundness of mind, fraud, undue influence and that the will was unduly executed. The cause was placed at issue and submitted to a jury which by its verdict found against

the appellants and that the will was valid. A motion for a new trial was filed and overruled and this appeal questions the action of the court in its ruling on said motion. The evidence is not in the record; the appeal is based on § 2-3223, Burns' 1933; and the certificate of the court states that all instructions given and refused were applicable to the evidence excepting those numbered 16, 22 and 25 tendered by the appellants and refused.

The motion questioned the giving of instructions numbered 7, 8, 9, 11, 12, 13, 14, 15, 16, 20, 22, 24, 27, 29, 32, 33 and 34, given at the request of the appellees, defendants below, and also the refusal to give instructions numbered 10, 12, 14, 22, 25, 26, 29 and 30, requested by the appellants, plaintiffs below. Assigned error on instruction number 32 of the former group is not briefed under Clause (f) of Rule 2-17 of this court and any claimed error because of the giving of this instruction is waived.

Of the latter group instructions numbered 22 and 25 are by the certificate of the court held to be not applicable to the evidence and need no further consideration.

The appellees question the sufficiency of the record to present any question under § 2-3223, Burns' 1933, but we believe under the holding in *Jones* v. *Beasley* (1921), 191 Ind. 209, 131 N. E. 225, there is a compliance with the terms of the statute.

The rule of law applicable to instructions in an appeal under the above statute is stated in *Jones* v. *Beasley, supra,* pp. 212, 213, in these words:

"Where the evidence is not in the record, the giving of an instruction will not constitute reversible error if it would not have been erroneous under

a supposable state of the evidence admissible under the issues to which it could apply. . . . The burden is upon the appellant to present for review a record which affirmatively shows that the error complained of was committed. . . .

"But if it is shown that an erroneous instruction of a character which might probably be prejudicial to appellant was given and was duly excepted to, the court will not indulge in conjecture as to whether the state of the evidence made the error harmless, but it will be presumed to have prejudiced appellant's substantial rights unless the contrary is shown . . ."

See *Bonham* v. *Mendenhall* (1934), 98 Ind. App. 189, 188 N. E. 695; *Thomas* v. *City of Huntington* (1923), 80 Ind. App. 476, 141 N. E. 358.

The above opinions indicate that it is necessary to except to an instruction in order to raise a question. On September 2, 1940, this court by Rule 1-7 determined that a general exception to an instruction would no longer raise a question and it is now necessary to show a specific objection to each instruction which is questioned in the motion for a new trial or on appeal. Furthermore, the question must be based upon that specific objection and any and all defects not so pointed out to the trial court are waived. This rule is not different from the rule so long in use in the admission of items of evidence. Unless a specific objection to a question is made, the admission of the answer is not error, and in the motion for a new trial or on appeal, the party is confined to the specific objection so made, and all other possible objections are waived.

Another rule of this court (Rule 2-17) provides that any claimed error which is not briefed under proposi-

tions, points and authorities shall be considered ■ waived, and it seems likewise clear that if a proposition or point is not based on the specific objection it cannot be considered.

The first instruction complained of is number seven. This instruction told the jury that the mere use of intoxicants would not deprive the testator of the ■ right to make a will; that becoming intoxicated and having a sedative administered raised no presumption of unsoundness of mind at the time of the execution of the will. It further told the jury that if from all the evidence they found the testator to be of sound mind at the time of the execution of the will, they should find for the defendants on that issue.

The objection made in the trial court was that it invaded the province of the jury by stating as a matter of law that the hypodermic injections were sedatives; that it was contrary to the uncontradicted facts; that the amount of drinking did as a matter of law constitute excessive drinking; and that it invaded the province of the jury by instructing as a matter of law that the facts in evidence did not render the testator incapable of making a will. It was further asserted that the instruction was peremptory and directed a verdict for the defendants regardless of the issues of fraud and undue influence. All parts of the objection excepting the first and last depend upon the quantum of evidence received at the trial. Since the evidence is not before us we cannot determine anything in regard thereto. The first part of the objection was not based on a correct interpretation of the intent of the instruction and the last part erroneously assumed that the instruction was peremptory regardless of the issues of fraud and undue influence. The instruction directed a finding for the defendants on the issue of unsoundness of mind if

the jury found from all the evidence that the testator was of sound mind at the time in question. That did not make the instruction peremptory in character nor did it ignore the other issues.

Instruction number eight merely stated that some evidence was given concerning the divorce; that the judgment of divorce could not be impeached in this proceeding; and that the jury was not called on to pass upon the merits of the divorce proceeding.

The objection to this instruction referred to the quantum of evidence concerning the divorce and matters connected therewith. It assumed that there was an issue in this case in regard thereto, and that the instruction took away from the jury the right to consider the conduct of the testator and Ethel Malsbury prior to and leading up to the divorce proceeding. In the absence of the evidence we cannot determine anything based on such objection. Further, the certificate of the court makes the instruction applicable to the evidence and the claim that the instruction assumed that the divorce was "in issue" is not well founded.

Instruction number nine told the jury that although some evidence concerning a trust fund received by the testator had been introduced, there was no issue in the cause as to whether or not such fund had been so received. It further stated that the will did not attempt to dispose of such fund and that the will could not defeat the provisions of such trust, if there were one. The objection to this instruction assumed that such instruction told the jury that evidence concerning the trust fund could not be considered in determining or passing upon the issues of unsoundness of mind, undue influence or fraud, and further that the instruction was peremptory in character. An examination of

the instruction and of the objection readily discloses that the one is not even distantly related to the other. The objection shows that the instruction was not carefully read or studied prior to the entry of the objection. This instruction concerned a collateral matter and did not even intimate that the evidence could not be considered on all issues of unsoundness of mind, fraud and undue influence.

Instruction number 11 told the jury that the questions of whether the testator furnished the money for a farm or whether he or Ethel Malsbury owned said farm were not for their consideration or determination.

The objection stated that this instruction took from the jury the right to consider such facts on the questions of unsoundness of mind, undue influence and fraud. The instruction was not subject to the criticism made.

Instruction number 12 limited to the issue of unsoundness of mind the effect of evidence obtained by questions propounded to Ethel Malsbury. The objection was that such instruction limited the right of the jury to consider such evidence on the single issue of unsoundness of mind.

In the absence of the evidence we cannot determine the correctness of the action of the court in so limiting such evidence. We have no difficulty in supposing a state of the evidence that would render this instruction a proper one.

The thirteenth instruction reads as follows:

"Every person is presumed to be of sound mind until the contrary is shown, and the burden rests upon those who assert his unsoundness of mind to prove such assertion by a fair preponderance of the evidence; and in this case the presumption is that John J. Miller was of sound mind at the time of the execution of said will, unless

and until the contrary has been shown by a preponderance of the evidence."

The objection which was interposed to the above instruction is as follows:

"We object to Instruction Number Thirteen (13) for the reason that it takes from the jury the right to consider a fact, if such fact is found by the jury that the *Testaor* may have been of unsound mind sometime before the execution of the Will and in which case a presumption of fact would prevail if such unsoundness of mind continued down to the execution of the Will and deprive the jury of the right to consider any such presumption of fact."

The objection was not that our law did not recognize presumptions, but that the court failed to permit the consideration of another and different presumption. The objection contained no valid reason why the instruction should not be given, although we are not by this action approving the instruction as given. *Kaiser* v. *Happel* (1941), 219 Ind. 28, 36 N. E. (2d) 784. The objection, when coupled with instructions submitted by the appellants, indicates that if there was any error in giving instructions which asserted the existence of presumptions, the error was invited.

The fourteenth instruction told the jury that as a general rule and in the absence of improper influence exerted on the testator, his motives are for his own determination and at will he. may cut off his heirs at law; that a person of sound mind may by will dispose of his property as he chooses for any lawful purpose, except for certain rights of a husband or wife not involved in this case.

The objection asserted that the instruction was bad because it stated that in the absence of fraud or undue influence one may dispose of his property as he pleases.

That part of the objection is akin to paraphrasing part
of the instruction and is not a specific objection under
our rule. This objection further asserted that the in-
struction invaded the province of the jury because it
stated that the right of a wife was not involved at the
time of the execution of the will. A will speaks only
from the time of death, for prior thereto, it may be
changed at any time. If the wife's rights were involved,
we do not know it because the evidence is not before
us. The objection further asserted that the date of the
contract was not conclusively shown by the evidence
as a matter of law, and the question of whether or not
the contract of settlement preceded the will was a fact
to be decided by the jury. This instruction does not
mention any contract and we cannot perceive how that
part of the objection could raise any question.

The fifteenth instruction told the jury that while
they should consider the will along with the other evi-
dence on the question of the mental condition of
the testator at the time of the execution of the
will, nevertheless, the mere fact that the will
disposed of the testator's property in such manner that
it was not devised to those who would have been his heirs
under the statutes of descent did not establish his in-
sanity or raise any presumption of unsoundness of mind.
The instruction further stated that a man with testa-
mentary capacity may dispose of his property as he
may see fit and even if the jury believed that the will of
the testator was unwise, unfair or unjust, such facts
alone would not authorize the jury to set the will aside.

The objection is that it took away from the jury the
right to take into consideration the elements of fraud
and undue influence in arriving at their verdict. This
instruction is not peremptory and the four points raised
in the brief under propositions, points and authorities

are so drawn that the first is the only one that has any relation to the objection, and in that point the instruction is treated as if it were not full enough. If it lacked fullness, the appellants should have submitted one that contained the omitted elements. Considering the objection and the points and authorities cited we cannot see that any error has been shown.

Instruction 16 in effect told the jury that unsoundness of mind in order to invalidate a will must exist at the time of the execution, and even if they found that the testator had been injured and a clot had formed on his brain, this would not invalidate the will if they also found he had recovered and was of sound mind at the time of the execution of the will.

The objection stated that this instruction was mandatory in form and that it directed the jury that certain evidence was sufficient to show recovery. This objection is not well taken. What the court did say was that if they found he had recovered and was of sound mind, the fact of the injury would not invalidate the will.

Instruction number 20 was limited to the question of mental capacity and told the jury that want of equity in the disposition of property was not sufficient to set a will aside, but where the instrument has been attacked for want of mental capacity of the testator, the will and its provisions, together with other proved facts, might be considered on the question of sanity but for no other purpose.

The objection asserted that this instruction took from the jury the right to take into consideration the inequitable and unjust disposition on the question of fraud and undue influence. The instruction is by its own terms limited to the one issue of unsoundness of mind. It is therein stated that it is for the guidance of the jury

on that one question. If this lacked fullness, an instruction containing the elements claimed to have been omitted should have been offered. The jury was sufficiently instructed on the other issues.

Instruction number 22 was couched in the following language:

> "In determining whether or not the decedent was of unsound mind at the time the instrument in controversy was signed and witnessed by him, he should be compared with himself and not with others; his manner, talk and action at the time, when it is alleged he was of unsound mind, should be compared with his manner, talk and actions at a time when he was not charged to have been of unsound mind."

The objection to the above instruction was in the following words:

> "We object to Instruction Number Twenty-two (22) for the reason that said Instruction is misleading and *cofnusing* and for the further reason that it takes away from the jury the right to take into consideration what a reasonable, prudent or ordinary person might or would do under the circumstances in arriving at the question as to whether or not the Testator was of sound or unsound mind, and excludes from the jury the right to take into consideration other facts and circumstances in evidence other than those pertaining to the comparison of the Testator as to his condition before and *afer*."

This instruction was not mandatory, and the objection was not that the measure of testamentary capacity was erroneous but that another erroneous measure should also be used in conjunction with the one set forth. By stating that the instruction was confusing and misleading the appellants did not make a specific objection and no question is raised.

Instruction number 24 told the jury that while a person must have mind sufficient to know the extent and value of his property, the number and names of the persons who are the natural objects of his bounty, their deserts with reference to their conduct toward him, their capacity and necessity, and that he should have sufficient memory to retain these facts long enough to have his will prepared and executed, the fact that he did not make provision for or name in his will any or all of his heirs at law, did not establish the fact that he did not know the names of those who were the natural objects of his bounty. It further charged that such facts raised no presumption that he did not know the number or names of those who were his next of kin, and the law itself raised no presumption that one's brothers and sisters or other next of kin are the natural objects of his bounty. It is further stated that one may be the natural object of the testator's bounty by reason of friendship as well as kinship or by reason of kind treatment, services and assistance to the decedent.

This instruction may be questioned as being argumentative, but in the main it stated that no presumption was raised by reason of the facts outlined. The objection was not applicable because it assumed that this instruction took away the right of the jury to consider the evidence on the facts outlined; that it was bad because under it persons other than relatives might be considered natural objects of his bounty and that it assumed that the instruction stated that the beneficiary rendered kind treatment.

Without approving this instruction as a whole, we must say that the objection did not point out any infirmity, and under our rules we have no question before us based on this instruction.

Instruction 27 told the jury that in the absence of evidence a will that was executed with the formalities of law is presumed to be fairly executed, without fraud, duress or undue influence, and that the testator was a person of sound mind, and whoever alleged the contrary had the burden of proving and sustaining such allegations.

The objection to this instruction was that it presumed as a matter of law that the will in question was executed without fraud, duress or undue influence and that the testator was a person of sound mind, and further it advised the jury that the probate of the will in question raised a presumption of the validity of the instrument. The objection paraphrased the instruction and alleged it asserted a presumption of law as to the incidents paraphrased. The effect of probating a will was not involved. The appellants and the appellees tried this case on the assumption that instructions on presumptions were proper. The last sentence of the instruction stated the law in the abstract. The first did not concern the jury, but even if the objection were pertinent we would be forced to say that while it may be erroneous, it probably was not harmful. *Kaiser* v. *Happel, supra.*

Instruction 29 told the jury that unless they found from a preponderance of the evidence that the testator, on the date of the execution of the will, was under the influence of some person or persons who directed the execution of the will in the language and words so written, and unless such influence and control was of such compelling force that the will so executed was not his will, they should find for the defendants on the question of undue influence.

The objection to this instruction was that it was a misstatement of the law; that to find the will was executed under undue influence it told the jury that it

must be directed in the language of the will when as a matter of law it is the disposition of the property and not the phraseology used in the will directing such disposion of property (that created an invalid instrument). The objection also asserted that it took from the jury the right of deciding whether or not any of the language was directed as a result of the influence exercised by some person. This objection is more of an argument than an objection. It fails to point out any serious defect.

Further, the proposition and points treat instructions numbered 29, 31 and 33, as a group. The proposition and points are so framed as to speak in the singular and it is impossible to ascertain to which instruction reference is made. While matters that involve the same question may be grouped under our rules, in this particular it is very difficult to follow the brief maker. The instructions were not the same, the specific objections were not similar, and it is not one but many questions that are presented and we are asked to unscramble the efforts of the brief maker and in some manner find out to which instruction or objection he is pointing. This we are not required to do (*Appleby* v. *State* [1943], 221 Ind. 544, 48 N. E. [2d] 646, 49 N. E. [2d] 533) nor does the writer claim such ability. Neither the objections nor the instructions are set out verbatim or in substance. By such proposition and points no question is presented on the giving of these instructions.

The thirty-fourth instruction stated that declarations of the testator made at times other than at the time of execution should not be considered on undue influence, fraud or duress. It also withdrew from the jury all evidence given by John Allman and Albert Germann on the above issues.

The objection to this instruction was that it did not go farther and withdraw from the jury the testimony of Ethel Malsbury on the issues of undue influence, fraud and duress. The objection was merely an argument and not a specific objection to the instruction given. Statements of the testator made at any time other than the time of execution are not competent on any issues except the one of unsoundness of mind. *Ditton* v. *Hart* (1911), 175 Ind. 181, 189, 93 N. E. 961, 965; *Montgomery* v. *Pierson* (1924), 195 Ind. 475, 480, 145 N. E. 771, 772. The proposition and points follow the objection and there it is asserted that the court was not consistent and fair. No question on this instruction is presented for our determination.

Instruction number 33 is treated separately as well as in a group with numbers 29 and 31. It charged that undue influence must be connected with and operate on the maker of the will at the time of execution and that it must be of such compelling force that the will is not the will of the testator except in the sense that he has consented to put his name to it in the form in which it appears.

The objection asserted that the test was in excess of a proper one, that it was confusing and that it told the jury that the person influencing the testator must be present at the time of the execution. In their points the appellants claim the instruction was too narrow and that in effect it made coercion the measure of undue influence and excluded influence exercised prior to the time of the execution. The objection did not point out any defect in this instruction, and in appellants' brief no authority is cited to sustain their position. The instruction was framed in words that are almost identical to those used in the case of

*Wiley* v. *Gordon* (1914), 181 Ind. 252, 266, 267, 104 N. E. 500, 505, which is cited in the following: *Barr* v. *Sumner* (1915), 183 Ind. 402, 423, 107 N. E. 675, 682, 109 N. E. 193; *Beaver* v. *Emry* (1926), 84 Ind. App. 581, 587, 149 N. E. 730, 732; *Crane* v. *Hensler* (1925), 196 Ind. 341, 354, 146 N. E. 577, 581, 148 N. E. 409. No error is shown in the giving of this instruction.

We now turn to a consideration of the instructions which were tendered by the appellants and refused by the court.

Instruction number 10 singled out one phase of the will and of the evidence. It was an argument on unsoundness of mind. If it were meant to explain an "insane delusion" it should have included the element of spontaneity.

A similar instruction was offered and refused in *Robbins, Exr.* v. *Fugit* (1920), 189 Ind. 165, 167, 126 N. E. 321, 322, and the court in that case said:

"To make this instruction accurate, it should have embodied the element that the testator spontaneously believed these things to be true in the face of the facts to the contrary, and in the face of reason."

Instruction number 12 offered by the plaintiffs and refused by the court would have told the jury that the law recognized the difference between general insanity and partial insanity or insanity as to a certain subject; that monomania is an example of partial insanity and if the testator was under the influence of monomania and such will was the product of such monomania, it was as invalid as if made under the effects of general insanity.

Insanity, partial insanity or insane delusions were fully covered by instruction 13 given by the court on the request of the appellants. In this instruction they added the word monomania as meaning partial insanity, but that change did not make it necessary for the court to reinstruct on the subject of partial insanity or monomania.

Instruction number 14 stated that a man's repulsion toward his wife might be so contrary to human nature that it would lead to the inference that some mental defect existed, and that if the testator repulsed his wife in a harsh or unreasonable manner and there was no explanation, this would justify the jury in inferring that a mental defect existed and they could take that into consideration in passing upon the question of deciding whether or not the decedent was suffering from an insane delusion. If they should further find that such insane delusion entered into the making of the will their verdict should be for the plaintiffs.

This was an attempt to tell the jury what weight to give specific evidence and what evidence might be used in determining the question of an insane delusion. It did not include the idea that spontaneity is an element of a delusion and that it must be so fixed in the mind that it will not respond to persuasion or reason. The instruction was not a proper statement on the subject which it attempted to cover and would have invaded the province of the jury. It would have been proper under no conceivable condition of the evidence.

Appellants' instruction number 26 was argumentative and mandatory on the question of undue influence. It was correctly refused.

Instruction number 29 would have told the jury that the testator executed a note to Ethel Malsbury

and that the execution of this note might be considered on the question of unsoundness of mind and undue influence; that if the note was valid it would tend to establish soundness of mind, and if found invalid it would tend to establish unsoundness, and that the validity of the note would depend on whether or not other competent evidence had shown it to be valid. This instruction singled out evidence and would have charged the jury as to the weight to be given such evidence. The refusal of the court to so instruct the jury was not error. *Fort Wayne, etc., Traction Co.* v. *Smith* (1914), 57 Ind. App. 304, 310, 107 N. E. 31, 33; *Chaney* v. *Baker* (1922), 304 Ill. 362, 372, 136 N. E. 804, 808.

Instruction 30 would have told the jury that the filing of a claim in the estate by the sole and only legatee would have constituted an admission that the will was invalid on one of the grounds alleged.

This instruction would have invaded the province of the jury by telling what weight should be given a specific item of evidence and was properly refused. *Fort Wayne, etc., Traction Co.* v. *Smith, supra.*

In *Chaney* v. *Baker, supra,* the Supreme Court of Illinois in discussing this question, p. 372, said:

"Instructions ought not to select one item of competent evidence and inform the jury that that item of itself does not establish the case. If it is competent evidence it should be considered by the jury, and if the jury should be instructed as to each item of evidence that of itself would not prove the case, the tendency of such instructions would be to minimize the weight to be given to each particular item of evidence so referred to and so to minimize the weight of all the evidence. If evidence is admitted for a particular purpose it is proper to confine its effect

by an instruction to the purpose for which it was admitted, . . ."

We have covered each question that has been raised in the briefs of the appellants, excepting the claim that appellees waived the right to assert that the ▇ objections to the instructions were not sufficiently specific to raise any question. In the appellees' answer brief it was asserted that the objections to the instructions were not specific and that they were insufficient to raise any question. It was also stated that the propositions, points and authorities were not based upon and addressed to the objections made to the various instructions. There was merit in the claims of the appellees on each of the above questions. No waiver has been shown.

Both sides requested instructions to which they were not entitled and each side seemed to have been imbued with the idea that presumptions of various kinds were in vogue in a proceeding of the kind and character under consideration. Many of the instructions given were improper, but the objections were insufficient to raise any question. However, there were instructions given which contained the correct standard of testamentary capacity and which correctly directed the attention of the jury to the issues and the legal rules which governed.

If we now permit an appellant to object to an instruction for one specific reason and then on appeal permit questions to be raised on other than the specific ▇ reasons used in the trial court, our rule would be ineffective and the lower court might be reversed on a question which was never presented to it.

As the rule now stands, the attorneys must share with the court the burden of correctly instructing the

jury. If the fault in an instruction is so slight ▮ or so chimerical that a person trained in law and in its practice cannot, in the period of time given for an examination thereof, perceive anything detrimental to his cause, then certainly the members of the jury should not be expected to be misled by anything contained in such instruction. Courts undoubtedly give to the attorneys ample time to examine the instructions and make their objections and the court is then expected to examine the instructions in the light of the objections so made.

No reversible error is shown and the judgment of the lower court is affirmed.

Note.—Reported in 65 N. E. (2d) 106.