EIFFE *v.* STATE

[No. 28,218. Filed March 11, 1948.]

*Owen S. Boling,* of Indianapolis, for appellant.

*Cleon H. Foust,* Attorney General, and *Frank E. Coughlin,* First Deputy Attorney General, for the State.

GILKISON, J.—Appellant was charged by indictment with murder in the first degree in the Criminal Court of Marion County. To this charge he entered a plea of not guilty, and a special written plea of temporary insanity to which the state replied by general denial.

The cause was tried by jury resulting in a verdict of guilty of murder in the second degree, upon which a judgment and sentence of life imprisonment were rendered.

The assignment of error questions only the overruling of appellant's motion for new trial.

The motion for new trial contains nine specifications. Nos. 1 and 2, assert error in admitting state's exhibits 1 to 20, both inclusive, over defendant's objections. No. 3, asserts error in overruling defendant's objection to a question propounded by the court to the witness, Dr. Charles Hepburn, as follows: "And now, doctor, please tell the jury what was done and said in connection with your examination and conversations with Mr. Eiffe." No. 4, alleges error in admitting in evidence over defendant's objection, defendant's conversation with witnesses, Dr. Hepburn and Dr. Keene when they were examining him under the court's orders. No. 5, asserts error in overruling defendant's motion for a directed verdict. No. 6, claims error in refusing to give, each of defendant's tendered instructions, numbered from 1 to 23, both inclusive. No. 7, asserts error in the giving of each of the court's instructions from 1 to 54, both inclusive. Nos. 8 and 9, assert that the verdict is not sustained by sufficient evidence and is contrary to law.

We shall discuss these alleged errors in the order noted.

From the evidence it appears that on November 8, 1944, one Clifford Gose was shot to death in a place called "The Corner Bar" located at 25 South West Street, in Indianapolis, Indiana. The manner in which this occurred was related by the appellant in his confession about 6:30 P.M. the next day, in substance as follows: "I was asleep in the dining room at the rear of this tavern, and somebody gave me a hot foot by putting matches around the sole of my shoe and lighting them. I woke up and saw a man laughing at me and I walked over and asked him if he was the one that gave me the hotfoot. And he said yes, why, and he then took a punch at me and I grabbed at him

and someone separated us. I walked in and sat at the bar and had another drink—a shot of whiskey and a glass of beer. After drinking these I left the tavern and went up on Washington Street and went into another tavern and had a glass of beer. I left this tavern and went to the Red Ball Garage and got my gun. I then went back to the Corner tavern, went in and sat down on a stool at the back of the bar. I sat down at the right of the man who I had had the argument with. When I sat down at the bar I ordered a drink and this man sneered at me and said you can't take it. We started arguing again and I pulled my gun out of my right front pants pocket and shot him. He fell off the stool and I got up and walked out of the tavern. I then wandered around on the streets until I was arrested at the Lorraine Hotel. The gun I used to shoot this man was taken out of my left hip pocket by the police when I was arrested." He further stated that he did not know the man's name but knew him when he saw him, and that he fired more than one shot but did not know how many.

In his brief appellant does not discuss the alleged error in admitting in evidence State's exhibits 1 to 5 inclusive, nor from 7 to 20, both inclusive, and thereby such alleged errors are waived.

Appellant vigorously attacks the ruling admitting in evidence state's exhibit 6.

Exhibit 6 is a typewritten statement signed by the defendant on the day after the shooting and witnessed by three policemen that day; the next day it was read over to the defendant by another policeman and the defendant said it was the statement he had made the night before and this policeman then signed it as a witness also. Its admission in evidence was objected to for the reasons: That it was not executed volun-

tarily. That at the time the defendant was in such a state of mind that he was unable to realize the import of the document. That he was not conscious of the contents of the statement. That at the time he was "of a temporary unsoundness of mind." That at the time he was intoxicated. That he was not given an opportunity to consult counsel before signing the statement. The court heard evidence relative to the objection in the absence of the jury. Naturally the strongest evidence for appellant was his own, which we may summarize as follows: He remembered being at detective's headquarters at the city jail on November 19, 1944—that he had a hangover, was sick and nervous. That no force was used on him at all; that he told Mr. Goodman (the policeman who questioned him) he had no objections to talking to him; that he answered Mr. Goodman's questions; that some parts of the statement are not in his words; that he was not advised that he did not have to sign a statement of this kind; that he had no opportunity to have legal counsel present; that his mind was not functioning properly; that he was not in fear; that he had not been threatened by anybody; that he was mentally distracted by liquor and nervousness; that he had been drinking heavily the day before; that he signed the statement because he wanted to have the trial over quickly. There was no evidence of any inducement having been offered him.

Section 9-1607 Burns' 1942 Repl. provides as follows:

"The confession of a defendant made under inducement, with all the circumstances, may be given in evidence against him, except when made under the influence of fear produced by threats or by intimidation or undue influence; but a confession made under inducement is not sufficient to warrant a conviction without corroborating evidence."

This court has consistently held that,

"A confession is prima facie admissible in evidence and the burden of showing its incompetency, under the above statute, is upon the defendant. Anderson v. State (1933), 205 Ind. 607, 616, 186 N. E. 316; Mack v. State (1931), 203 Ind. 355, 372, 373, 180 N. E. 279, 83 A. L. R. 1349; Hicks v. State (1937), 213 Ind. 277, 291, 11 N. E. 2d 171, 12 N. E. 2d 501.

"The admissibility of a confession is a question to be determined by the court. It may hear the evidence with respect to the confession in the absence of the jury, and from such evidence determine the competency of the offered confession. . . .

" 'The securing of voluntary confessions from guilty criminals is to be desired, and the reasonable examination of prisoners charged with or suspected of crime is and should be allowed in the interest of public welfare and safety, but such examinations should be kept within proper bounds. The law protects persons charged with crime from ill or unjust treatment, and cruel and brutal methods should never be tolerated. Bonahoon v. State (1931), 203 Ind. 51, 178 N. E. 570, 79 A. L. R. 453. . . .

" 'Confessions and admissions made voluntarily or under inducements other than fear produced by physical violence, threats, intimidation, or undue influence are admissible in evidence.' "

*Caudill* v. *State* (1946), 224 Ind. 531, 69 N. E. 2d 549, 552; *Mack* v. *State,* supra.

Since the appellant was not influenced by inducement, or by fear produced by threats, intimidation or undue influence in making the written confession offered, we find no error in admitting it in evidence. That at the time of making the written confession appellant was affected by a "hangover" and nervousness from his drunkenness of the previous day is not a sufficient reason for rejecting it from evidence. 22 C. J. S., Criminal Law, § 730 p. 1243,

Consciousness of Making p. 1247; 20 Am. Jur. Evidence, § 525 p. 449. It is only when an accused is so drunk as to render him unconscious of what he is saying or producing a state of mania that the law will deem his confession incompetent. Intoxication of a lesser degree is for a jury to consider in determining the weight to give the confession. *State* v. *Laughlin* (1908), 171 Ind. 66, 71, 84 N. E. 756. *State* v. *Grear* (1881), 28 Minn. 426, 41 Am. Rep. 296. *State* v. *Hall* (1932), 54 Nev. 213, 235. *Cardoza Bell* v. *United States* (1931), 47 F. 2d 438, 74 A. L. R. 1098 and Anno. 1102-1104. See also Anno. *Ammons* v. *State,* 18 L. R. A. (n.s.)—"f. Mental Condition of Accused" p. 788, 789.

Prior to making his confession appellant made no request for counsel. The general rule is that it is no objection to the admissibility of a confession that it was made by the accused when he was without counsel. *State* v. *Gorham* (1894), 67 Vt. 365, 31 A. 845. *State* v. *Patterson* (1873), 68 N. C. 292. *Toomer* v. *State* (1910), 112 Md. 285, 76 A. 118. Had a request been made for counsel a different question would be presented. *People* v. *Siemsen* (1908), 153 Cal. 387, 95 P. 863; *State* v. *Neubauer,* 145 Ia. 337, 124 N. W. 312.

Some states have statutes providing that an accused shall be warned in substance that, "anything he says may be used against him," before taking a confession. Indiana has no such statute. However, the custom is frequently followed by our police department and is to be commended. It has a tendency to show the voluntary nature of the confession. However, the mere failure to give such warning would not of itself affect the admissibility of the confession in this jurisdiction.

At the close of the evidence for the state, appellant

filed a written motion for a peremptory instruction for verdict in his favor, for the alleged reason that there is no evidence in the record that the man killed was Clifford Leon Gose, as charged in the indictment. The motion was overruled.

We have examined the record and find that in his written confession, among other things, defendant said he was 51 years old, that he shot the man, and that the man then fell off the stool. He was then asked: "Q. The man killed in the Corner tavern was named Clifford Gose. Do you know this man? A. Not by name but I knew him when I saw him. Q. How many times did you shoot Clifford Gose? A. I know I fired more than one shot but I don't know how many. Q. What did Clifford Gose say to you before you shot him? A. All I remember is he made a slurry remark to me about not being able to take it. Q. What did you say to Clifford Gose before you shot him? A. I don't remember what I did say. Q. What did Clifford Gose do before you shot him? A. He attempted to make a pass at me."

This part of the confession is corroborated by the witness, Joseph Naine, a guest at the tavern at the time of the shooting, and by John Graham, bartender, who testified he heard two shots, looked around and "saw Mr. Gose flip off the stool on the floor." He knew him as "Cliff Gose," and had known him for three or four years. When this witness went to the kitchen the body remained on the floor. The man who was shot was also identified as Clifford Leon Gose by witnesses, William Edwards, David Doughty, and Nick Basteyick.

We find no error in overruling the motion for a directed verdict.

Appellant's tendered instructions from 1 to 3, both

inclusive, and 13 to 16, both inclusive, with respect to drunkenness, incapacitating a defendant from forming or entertaining a specific intent to commit murder in either the first or second degree, were each refused. By his instructions 21 to 36, both inclusive, 38, and 42, the trial court exhaustively instructed the jury with respect to the plea of insanity filed, and the evidence introduced with respect to this plea. To the extent appellant's tendered instructions noted were pertinent and proper, this matter was fully covered by the exhaustive and impartial instructions of the court so given.

We find no error, therefore, in the refusal to give these instructions.

By his tendered instructions numbered 4 to 12, both inclusive, appellant sought to have the court tell the jury the degree of provocation required to reduce an unlawful homicide to manslaughter. Some of the tendered instructions are repetitious, and others are erroneous. They were each refused by the trial court. To the extent any were proper, they were fully covered by the court's instructions 17, 18 and 50.

Appellant in his brief does not discuss other instructions tendered by him, and any question concerning them is thereby waived. *Allman* v. *Malsbury* (1946), 224 Ind. 177, 65 N. E. 2d 106, 109.

The court gave the jury its own instructions numbered from 1 to 53, both inclusive. The record shows that appellant objected and excepted to some of the instructions given by the court as follows: "and the defendant now objects and excepts to each of the court's instructions numbered two (2), fourteen (14), fifteen (15), twenty-three (23), twenty-four (24), twenty-six (26), twenty-nine (29), thirty-one (31), thirty-two

(32), thirty-three (33), thirty-six (36), thirty-eight (38), forty-four (44) and fifty-one (51) and exceptions as to each of said instructions are now granted." This is the only objection to the instructions given by the court on its own motion, made by appellant to the trial court.

Rule 1-7 of the Supreme Court of Indiana (1946 Revision), among other things, provides:

> ". . . After the court has indicated the instructions to be given, each party shall have a reasonable opportunity to examine such instructions and to state his specific objections to each, out of the presence of the jury and before argument, or specific written objections to each instruction may be submitted to the court before argument. No error with respect to the giving of instructions shall be available as a cause for new trial or on appeal, except upon the specific objections made as above required."

This rule has been in effect since September, 1940 and this court has held, agreeable with this rule, that objections not made specific in the trial court are waived by the objecting party on appeal. *Allman* v. *Malsbury, supra; Huntington* v. *Hamilton* (1947), 118 Ind. App. 88, 73 N. E. 2d 352, 357, 358.

Court's instructions 1, 4, 18, 27, 28 and 50 discussed at length in appellant's brief, were not objected to in the trial court in any way. Of course an objection to an instruction cannot be first raised in this court.

However, we have examined the court's instructions Nos. 14, 15, 23, 24, 26, 29, 31, 32, and 33, discussed in appellant's brief notwithstanding no specific objection was made to any one of them in the trial court and we find no error in either of them. Appellant has not discussed in his brief any supposed errors in the court's instructions numbered 36, 38, 44, and 51 thereby waiving any consideration of each of said instructions.

Appellant has not discussed in his brief the alleged error of the trial court in overruling defendant's objection to a question propounded by the court to the witness, Dr. Charles Hepburn, as follows: "and now doctor please tell the jury what was done and said in connection with your examination and conversation with Mr. Eiffe?" By failing to discuss it the alleged error is waived. However, we have examined the bill of exceptions and find that no objection to the question was made in the trial court.

An examination of the record shows that no objection was made, in the trial court, to the witnesses, Dr. Hepburn and Dr. Keene reciting the conversations that took place between them and the defendant, when they examined him with respect to his sanity, after their appointment for that purpose by the court. The question of the admissibility of evidence cannot be first raised in this court. *Meadows* v. *Thomas* (1917), 187 Ind. 216, 218, 219, 118 N. E. 811. *Clokey* v. *Smith* (1914), 182 Ind. 589, 590, 107 N. E. 273. *Seisler* v. *Smith* (1897), 150 Ind. 88, 92, 46 N. E. 993. We can review only the action of the trial court in overruling or sustaining objections timely made.

Finding no error, the judgment is affirmed.

NOTE.—Reported in 77 N. E. 2d 750.