HAAS ET AL. *v.* HAAS.

[No. 17,979.  Filed January 12, 1951.  Rehearing denied April 11, 1951.  Transfer denied May 23, 1951.]

336

*William R. Johnson,* of Terre Haute; *Harvey L. Fisher;* and *Craig & Craig,* both of Brazil, for appellants.

*Kenneth C. Miller* and *Eugene Weaver,* both of Brazil; and *R. Stanley Lawton;* and *Ross, McCord, Ice & Miller* (of counsel), both of Indianapolis, for appellee.

CRUMPACKER, J.—The appellee Mabel Haas, as the widow and sole heir at law of the late George Haas, brought this action to set aside his last will and testament on the grounds that it was executed through undue influence and that he lacked mental capacity to make it. The appellants are the brothers, sisters and a nephew of the said George Haas to whom he bequeathed substantial sums of money. They answered under Rule 1-3 and a second paragraph of answer wherein it is alleged that Mabel Haas, as the testator's widow, failed to elect to take under the law within the time prescribed by statute and thereby recognized his will as valid and is now estopped from contesting it. A demurrer to this paragraph of answer was sustained and the case went to trial by jury on the issues of undue influence and the testator's mental capacity to make a will. The verdict was for the appellee and, over the appellants' motion for a new trial, it was adjudged that said will is "invalid and of no force and effect."

Under the heading "Propositions, Points and Authorities" the appellants' brief sets out 20 propositions and 47 points made thereunder but in the section of said brief devoted to argument the appellants discussed the following alleged errors only: (1) sustaining the demurrer to the second paragraph of their answer; (2) the verdict on the issue of unsoundness of mind is not sustained by sufficient evidence;

(3) no evidence whatever to sustain the verdict on the issue of undue influence and the same should have been withdrawn from the jury; (4) in giving Instructions Nos. 3, 9, 13, 14, 15, 19, 20, 21, 22 and 35; (5) the refusal to give appellants' tendered Instruction No. 26; and (6) in permitting two doctors of medicine to answer a certain hypothetical question put to each in turn. All other questions presented in said brief we treat as waived. *Gluff* v. *Rouls* (1950), 228 Ind. 186, 91 N. E. 2d 176. We will discuss the questions presented in the order above set out.

Did the court err in sustaining the demurrer to the appellants' second paragraph of answer which counts on the appellee's failure to renounce the will and elect to take under the law? The appellants state their position thus: "The failure of a widow to elect to retain the rights in her husband's estate given her by the law, in the manner and within the time fixed by statute, is an election to accept the provisions of the will and a rejection of the provisions made for her by law, and having elected to accept the provisions of the will she cannot at the same time assail its validity." The pertinent statute reads as follows: "Whenever any personal or real property be bequeathed to any wife, or a pecuniary or other provision be made for her in the will of her late husband, such wife shall take under such will of her late husband, and she shall receive nothing from her husband's estate by reason of any law of descent of the state of Indiana, unless otherwise expressly provided in said will, unless she shall make her election to retain the rights in her husband's estate given to her under the laws of the state of Indiana, which election shall be made in the manner hereinafter provided." Burns' 1933, § 6-2332. Such election shall be made by verified writing in six months after said

will has been admitted to probate in this state. Burns' 1933 (1949 Supp.), § 6-2334.

These statutes have been construed to mean that in all cases where there is a will, the widow is conclusively bound by it unless she renounces its provisions and elects to take under the law in the manner pointed out in the statute. *Fosher* v. *Guilliams, Executor* (1889), 120 Ind. 172, 22 N. E. 118; *Collins* v. *Collins* (1891), 126 Ind. 559, 25 N. E. 704, 28 N. E. 190. To put it another way, on the death of a husband who made testamentary provisions for his wife, the failure of the surviving widow to make her election to take under the law instead of the will within six months after the probate thereof raises a conclusive presumption that she has accepted the provisions made for her in the will. *Easterday* v. *Easterday* (1938), 105 Ind. App. 80, 10 N. E. 2d 764. The purpose and effect of § 6-2332, *supra,* is to make it impossible for a married man, by testamentary disposition of his property, to deprive his widow of a full one-third thereof. It has no application in cases of intestacy and therefore the choice a widow has is between the one-third, of which the law says she cannot be deprived, and what she gets under the terms of a *valid* will. In other words the election statute is predicated upon the existence of a valid will. If a testator makes a will which is of no force and effect the mere failure of his widow to elect to take under the law cannot be considered as raising a presumption of any kind.

There are circumstances, however, which may estop a widow from contesting her late husband's will. An affirmative election to take under it is binding upon her in the absence of a showing that she was of unsound mind, under legal disability, or that the execution of the election instrument was procured by fraud or other unlawful means. *Hammond* v.

*Toyne* (1914), 181 Ind. 584, 105 N. E. 42. Again if she accepts and enjoys the benefits of property given to her under the terms of her husband's will with full knowledge of his mental condition and the manner in which such will was executed and remains in continuous possession thereafter, she will be estopped from assailing the validity of the will on the grounds that the testator was of unsound mind or that the will was unduly executed. *Keys* v. *Wright* (1901), 156 Ind. 521, 60 N. E. 309; *Starkey* v. *Starkey* (1906), 166 Ind. 140, 76 N. E. 876. The appellee's second paragraph of answer alleges neither an affirmative election to take under the will nor an acceptance of anything under its provisions. In our opinion the demurrer was properly sustained.

Is there sufficient evidence in the record to sustain the verdict that the testator lacked mental capacity to make a will? A detailed discussion of the evidence bearing on this question would unduly extend this opinion. We think it sufficient to say that the record is replete with instances of conduct on the part of the decedent which permit the jury to infer that he was of unsound mind, to-wit, indecent exposure, incoherence at times, threats of suicide, repetition in conversation, seeing people who weren't there, vacate staring, forgetfulness, confusion, failure to know friends and the use of narcotics on the very day he made his will. Twenty-three lay witnesses testified that in their opinion, based on what they saw him do and heard him say, all as related to the jury, he was a person of unsound mind when he made his will. There is also the opinion of two doctors of medicine, based on a hypothetical question, reciting the facts in evidence, to the same effect. In our opinion there can be no serious contention that the evidence in this respect is insufficient to sustain the verdict.

Is there any evidence of probative value to sustain the verdict on the issue of undue influence? It is true there is no direct and positive evidence of undue influence in this case. No witness saw or heard anyone exercise any control over the will of the testator through force, threats, cajolery, flattery or other methods. Such evidence, however, is not necessary. Undue influence may be proven by circumstantial evidence and the only positive and direct proof required is of facts and circumstances from which undue influence may reasonably be inferred. *Davis, Exr.* v. *Babb* (1921), 190 Ind. 173, 125 N. E. 403; *Workman* v. *Workman* (1943), 113 Ind. App. 245, 46 N. E. 2d 718. We think the evidence is such that the jury was warranted in finding that the testator, by reason of his mental and physical condition, was susceptible of influence. His will was executed at about 11 o'clock in the morning. Previously thereto narcotics had been administered at midnight, early in the morning and again at 9 o'clock. This was necessary to ease pain that was so severe that he could not lie quietly in bed. At such time he was a very sick man and mentally so weak that at times he did not recognize his friends of many years. That there was opportunity for the exercise of undue influence also seems to be established. Since the decedent's confinement in the hospital the appellee had been his almost constant attendant. The night before the will was drawn and executed the appellee mentioned to Elizabeth Hickson, the decedent's sister, that she had an appointment with a hair dresser the following morning to get a permanent wave and that she thought she ought to cancel it in order to stay with her husband. Mrs. Hickson persuaded her not to do so and it was during her absence at the beauty parlor that the will was drawn and executed and while Mrs. Hickson was at the hospital attending the testator

in order that his wife could keep said appointment. Motive for undue influence is apparent from the fact that if the decedent died intestate the appellee would take his entire estate and his brothers and sisters, including Mrs. Hickson, would get nothing. The will was drawn by a lawyer who had never done any legal work for the decedent and had not seen him for two years and at best was a mere acquaintance. Mrs. Hickson had been married to this lawyer's brother and he advised her "in everything" and handled all her affairs requiring legal services. The attorney whom the decedent regularly consulted was ignored in the transaction. The scrivener witnessed the will himself and called in his office associate to act as the other attesting witness notwithstanding the fact that disinterested persons were readily available for such purpose. There is also considerable evidence indicating that the will is an improbable one when viewed in the light of the just deserts of the legatees. All these circumstances combined are sufficient, in our opinion, to warrant the jury in concluding that undue influence had been exercised in the execution of the will in controversy and no error was committed by the court in refusing to withdraw the issue.

Did the court err in giving Instructions Nos. 3, 9, 13, 14, 15, 19, 20, 21, 22 and 35 to the jury on its own motion? All these instructions except Nos. 9, 13 and 14 deal with the law pertaining to undue influence and the only objection to them is that they are inapplicable by reason of a total lack of evidence tending to establish that issue. In view of what we have said, concerning the state of the record in that respect, the instructions were applicable to the evidence and were properly given.

Instruction No. 9 told the jury what it might consider in determining whether the testator was of sound

or unsound mind "at the time in question." The appellants say this tended to confuse the jury because the "time in question" was not definitely fixed by the instruction and, as there is evidence that the testator was of unsound mind for a considerable period of time, the jury might have believed that his mental capacity at the time he executed the will was not important. We see no merit in this contention as all the instructions must be considered as a whole and by its Instruction No. 17 the court told the jury that: "While you may properly consider evidence as to the mental condition of George Haas at times both before and after the time of the execution of the instrument in question, if you find it was executed by deceased, the court instructs you that the final inquiry is as to his mental capacity to make a will at the time he executed the instrument."

Instruction No. 13 is as follows: "Witnesses have testified before you as to facts concerning the appearance, manner, attitude, conduct, acts, personality, habits and conversations of George Haas. They have testified as to his family relations, his association and relationship with his wife, the manner in which he transacted his business, and the nature of his business, and the character of his property and estate. From such matters as testified to by the various witnesses, such witnesses gave you their opinion as to the soundness or unsoundness of the mind of the testator, George Haas. But each such opinion should be tested by the facts upon which it is based in order to judge of its probable correctness. It is not the opinion of such witnesses alone upon which reliance is to be placed as to whether George Haas was or was not of unsound mind when he executed his alleged will, but from the premises which supplied the con-

viction in the minds of such witnesses the jury, aided by these opinions, may form its own independent conviction and decide accordingly." The objection to this instruction is that it attempts to tell the jury to what facts the witnesses testified as a basis for their opinions of the mental capacity of the testator and thereby invades the province of the jury. We fail to see the force of this objection. The instruction merely directs the jury's attention to certain general subjects concerning which lay witnesses have testified and then correctly states the law governing the opinions of such witnesses based on their testimony and the manner such opinions should be considered by the jury. This instruction in almost identical words was approved by the Supreme Court in *Crawfordsville Trust Co.* v. *Ramsey* (1912), 178 Ind. 258, 276, 98 N. E. 177, 183; *McReynolds* v. *Smith* (1909), 172 Ind. 336, 348, 86 N. E. 1009, 1013; *Bower* v. *Bower* (1895), 142 Ind. 194, 199, 41 N. E. 523. See also *Hamling* v. *Hildebrandt* (1948), 119 Ind. App. 22, 81 N. E. 2d 603, 606.

The appellants challenge Instruction No. 14 because it first tells the jury that a person of sound mind may make such disposition of his property as he chooses no matter how inequitable and unjust such disposition may appear and his will cannot be set aside for that reason. It then informs the jury the fact that a will is inequitable and unjust may be taken into consideration in determining the testator's mental capacity to make it. They insist that such an instruction is conflicting within itself, confusing and misleading and its giving was reversible error. The instruction combines two principles of law: (1) If a testator is of sound mind the fact that he makes an unnatural and unreasonable disposition of his property is no reason for setting his will aside; and (2) in

determining his mental capacity to make a will, however, the disposition he makes of his property can be considered along with all other evidence on the subject. We see nothing conflicting, confusing or misleading in the combination of these two principles in a single instruction. As late as 1945 the Supreme Court, in *Allman* v. *Malsbury* (1946), 224 Ind. 177, 192, 65 N. E. 2d 106, approved a very similar instruction and in *Rice* v. *Rice* (1931), 92 Ind. App. 640, 649, 175 N. E. 540, this court said of such an instruction: "This is a fair statement of this portion of the law, and, taken in connection with all other instructions given, was not erroneous." To the same effect is *Egbert, Exr.* v. *Egbert* (1929), 90 Ind. App. 1, 5, 168 N. E. 34.

The appellants complain of the court's refusal to give their tendered Instruction No. 26. It reads as follows: "The court instructs you that the fact, if you find it to be a fact, that the testator, George Haas, at the time of the execution of his alleged will, was sick or suffering weakness or pain, this would not of itself necessarily take away his testamentary capacity." They say pain and suffering were stressed in the trial of the case beyond all other issues and doubtless became a controlling fact in the minds of the jury and that the tendered instruction was necessary to combat that impression. In its Instruction No. 12 the court told the jury in effect that regardless of a testator's physical condition he could make a valid will if he had sufficient mind to know and understand the business in which he was engaged and sufficient mental capacity to know and understand the extent and value of his estate, the number and names of the persons who were the natural objects of his bounty and their just deserts with reference to their conduct towards him and keep these things in mind long enough to have his will prepared and executed. We think this

instruction fully meets the purpose of tendered Instruction No. 26 and there was no error in its refusal.

The final question in this appeal concerns alleged error in permitting two doctors of medicine to express their opinions as to the testator's soundness of mind based on the facts recited in a hypothetical question propounded to each in turn. The appellants' motion for a new trial does not show their objections to this question and we have no way of knowing whether the alleged infirmities, upon which they here rely, were urged upon the trial court. Under these circumstances no question for our consideration is presented. *Johnson* v. *Glassley* (1949), 118 Ind. App. 704, 83 N. E. 2d 488; *Pennsylvania R. Co.* v. *Sargent* (1949), 119 Ind. App. 195, 83 N. E. 2d 793; *Wagner* v. *Howard Sober, Inc.* (1949), 119 Ind. App. 617, 87 N. E. 2d 888.

Judgment affirmed.

NOTE.—Reported in 96 N. E. 2d 116.

ON PETITION FOR REHEARING

CRUMPACKER, J.—We are urged to rehear this appeal because (1) we erred in holding that a widow is not estopped to contest the validity of her deceased husband's will by the single fact that she did not first elect to take under the law as she was privileged to do under Burns' 1933, § 6-2332; and (2) we failed to decide the questions raised by the court's refusal to give the appellants' tendered instructions 7 and 21.

The appellants' brief in support of their petition adds considerable force to the argument originally made in reference to the first proposition above stated. Nevertheless we remain firm in our belief that the election statute is not a part of, nor should

it be construed as limiting in any manner the scope of the statutes concerning suits to contest wills. If a man dies and leaves a valid will with which his widow is dissatisfied, she must elect to take under the law within six months of its probate or she is conclusively presumed to have accepted the provisions made for her by the will. If a man dies and leaves a will which is subsequently adjudicated to be invalid, he dies intestate and his widow never had an effective choice between the law and a will. The failure to do an impotent and useless thing under the election statutes should not prejudice her rights under the statutes pertaining to the contest of wills. So it seems to us that the most that can be said of a widow's failure to elect to take under the law rather than under the terms of a will she considers invalid is that she has lost her right of election if the will is subsequently adjudicated to be good and more than six months has elapsed since the date it was probated.

The appellants insist, however, that when a will is probated it is presumed to be valid and such presumption puts a widow to the necessity of renouncing its provisions or suffering an estoppel of her rights to contest its validity. Just what character of estoppel such a situation presents it is difficult for us to understand. The appellants suggest that it is in the nature of the common law estoppel *in pais* which arose "only in case of those solemn and peculiar acts to which the law gave the power of creating a right or passing estate, and to which the law attached as much efficacy and importance as to matters appearing either by deed or of record." 19 Am. Jur., Estoppel, § 38, p. 633. In Indiana, however, the doctrine of estoppel *in pais* has been given a much wider scope and our courts have used the term interchangeably with "equitable estoppel." As was said in *Fletcher* v. *Holmes*

(1865), 25 Ind. 458, "estoppels *in pais*, unlike technical estoppels by deed or matter of record, never exist without reference to the moral qualities of the conduct alleged. The door is shut against asserting a right when that would result in doing an injury, by the party asserting it, to some other person, or when, 'in good conscience and honest dealing a party ought not to be permitted to gainsay' his previous conduct." Estoppel *in pais* "is justified on the ground of prevention of fraud by the person sought to be estopped, the fraud consisting in the denial of that which the person sought to be estopped has previously asserted." *State* v. *Mutual Life Ins. Co.* (1910), 175 Ind. 59, 93 N. E. 213. The most that can be said of the appellee's conduct in the case at bar is that she apparently acquiesced in her husband's pretended will before she brought suit to set it aside. At no time did she affirmatively assert its validity nor did she accept any benefits under its provisions. There was no fraud in her conduct nor was anyone misled thereby to act to his detriment. The appellants would have benefited by her failure to contest the will, of course, but even though she had elected to take under the law before instituting suit to contest the will, a procedure the appellants insist was proper and necessary, the result would have been the same and, if there was any inconsistency in her conduct, it in no way affected the appellants' rights. We are unable to see any of the essential elements of an estoppel *in pais* in the situation and it seems to us that, in its final analysis, the appellants' contention resolves itself into the assertion that when a man dies testate leaving a widow, she must renounce the provisions of the will pertaining to her, by an election to take under the law, as a condition precedent to a suit to contest the validity of the will.

We have been referred to no case so holding nor have we found any. The case of *Herbert* v. *Nat. City Bank, Exr.* (1929), 88 Ind. App. 626, 165 N. E. 80, which the appellants assert prescribes such a procedure, merely holds that a widow who has elected to take under the law does not thereby affirm the validity of the will involved and so estop herself from contesting it. In that connection the court said: "At most, she but recognized or acknowledged the fact that the instrument probated purported to be the will of her late husband, without in any way obligating herself as to its validity." Logic indicates that the effect of a failure to elect should be the same. In other words the election and contest statutes pertaining to wills are separate and distinct and neither abridges or limits the rights granted under the other unless some principle of equitable estoppel intervenes.

In our initial opinion we failed to decide the questions raised by the court's refusal to give the appellants' tendered instructions 7 and 21. We did so because these instructions were discussed in the appellants' brief only collaterally in connection with the proposition that the court erred in permitting two medical experts to answer a certain hypothetical question. The burden of these instructions was in explanation of the difference in the legal and medical standards for the determination of a person's mental soundness. As the jury was fully and accurately informed concerning the legal standard of testamentary capacity it is not to be presumed that they departed therefrom in reaching their verdict simply because it was not explained to them that a man whom doctors of medicine might regard as unsound in mind might nevertheless have sufficient mental capacity to meet the requirements the law demands of a testator in making

a valid will. We see no error in the court's refusal to give the instructions in question.

Petition denied.

NOTE.—Reported in 98 N. E. 2d 232.