BRAWLEY, District Judge.
We have decided that a new trial should be granted in these cases for the reasons that will hereinafter appear in the consideration of the 'fifth exception in No. 199, and this conclusion renders it unnecessary to consider many of the questions discussed in the very learned arguments which have been presented. The suit was brought for the purpose of determining the title to about 70,000 acres of land in Western North Carolina, claimed by plaintiff under a grant from the state of North Carolina to Robert and William Tate, dated May 30, 1795. The defendants claimed title under grants to W. W. Flemming, dated December 28, 1877, and a deed from Flemming to the defendant land company, and the action was brought in pursuance of an act of the general assembly of the state of North Car *353 olina, which provides “that an action may be brought by any person against another who claims an estate or interest in real property adverse to him for the purpose of determining such adverse claims.” The complaint sets forth that the plaintiff was the owner in fee simple and entitled to the possession of a tract of land described therein, containing about 70,400 acres, except about 4,056 acres lying within said boundary, and previously granted by the state to other parties, and that the defendants were in wrongful possession of a portion of said lands. The answer of the defendants denied the title of the plaintiff and the wrongful possession, and, for a further defense, claimed “that, if the plaintiff has an apparent title to the land purporting to be described in said complaint, which these defendants deny, still the plaintiff cannot locate any such land, and no such land can be located or found.” Prior to this action, a suit of like character had been commenced against the defendant land company, and a separate action of ejectment against one Jack Sheehan, alleged to be in possession of a part of these lands, but by agreement of counsel these suits were consolidated, and the case was heard upon the complaint and answer in which the defendants were joined; and it has been strongly urged that under this agreement of counsel the defendants were estopped from setting up title by adverse possession to any of the lands, except that portion in possession of Sheehan, which was a part of the lands embraced in grant No. 945; and that the claim of possession in Holafield, which was not developed until late in the trial, was a violation of this agreement, and operated as a surprise. We are of opinion that the agreement of counsel did not operate as an estoppel, and that the substituted answer to the consolidated complaint put in issue the title of the plaintiff, and under the general denial it was competent for the defendant to prove adverse possession in itself, or in any one claiming under it. The case was duly tried by a judge and jury under these pleadings upon issues submitted in accordance with the practice in the state of North Carolina. Upon the issues so tried the jury found that the plaintiff had made out his title from the original grantees; that he had established his boundaries to the land claimed in his complaint; and that the defendant Sheehan was in wrongful possession of tract No. 945. To the issue submitted in the words following: “Has there been a continuous adverse possession by the defendant the Western North Carolina Land Company of any part of the land described in the complaint for more than seven years under color of title? If yes, describe the location of the adverse possession,”—the answer of the jury was: “Yes. Holafield’s possession on 915.” Upon this verdict a judgment was entered in favor of the defendant land company.
The defendants’ title was derived from W. W. Flemming by deed dated January 3,1878, conveying 32,382 acres, by metes and bounds, being “the land as described by seventy-six state grants numbered from 904 to 967, inclusive, and from 971 to 982, inclusive, the grants from the state being dated December 28, 1877.” It thus *354 appears that the verdict of the jury as to the adverse holding of Holafield in effect determined the title to the large body of land in dispute. Holafield lived in McDowell county, upon a tract of 50 acres, which he held under grant for about 27 years prior to the date of the trial. About 100 yards from his house lay a tract of land claimed by one Bird, who said that he had an entry for it. By a verbal agreement with Bird, he cleared a patch of 2£ acres adjoining his land, extended his fence so as to inclose it in his field, and remained in possession and cultivated it for five or six years, when one Flemming, the agent of the defendant land company, came to his house, and an agreement, of which the following is a copy, was entered into:
“Office of Lamp Post.
“Marion, N. 0., April 5th, 1883.
“I., S. H. Flemming, agent of the Western North Carolina Land Company, do hereby authorize J. G. Bynum Holafield to cultivate the two pieces of land near his house, containing about 2% acres, known as the ‘Tract Cleared by David Bird,’ and .in consideration of the authority here given, he, the said Holafield, is to prevent any encroachments on the land of the company, as far as possible, and to report any such to me. This lease is for one year from date.
“Witness my hand and seal this April 5th, 1883.
“S. H. Flemming, Agent.
“Witness:
his
"P. X Burnet.”
mark
It does not appear that this agreement was recorded, or that Bird was notified of it. About a year after this lease, Flemming was again at Holafield’s house, and authorized him to go on cultivating the land, to use firewood and rail timber, and to clear more land if he wished. By virtue of this authority, continued by Houck, a subsequent agent of the land company, he cleared additional land, making in all about six acres, which he inclosed in the same field. There was no written lease subsequent to that of April 5, 1883. The rent charged Holafield was that he should “look after the land.” The six acres thus inclosed by Holafield lay, so it is claimed, within the boundaries of grant No. 915. The testimony shows that the lands were in a wild, mountainous region, but that there were a number of settlements in the near neighborhood of Holafield, and that in the summer of 1889 a gentleman engaged in the lumber business was at Holafield’s house, and established his headquarters near him, and cut and hauled away a quantity of timber; but it is not clear from the testimony whether or not this timber was cut on the lands in controversy. One of the witnesses examined at the trial testified that there were 50 or 75 families living within the lines of the plat displayed, but he did not know thé nature of their claims.
This brings us to the consideration of the exception, which is as follows:
“Fifth exception: The said judge charged the jury upon the issues in regard to the defendant’s possession as follows: ‘Now, on that issue of possession, if you believe that Holafield entered into possession of that land, and was in possession of the land that he speaks of, within 915, under a lease from the agent *355 of the Western North Carolina Land Company, and remained in possession of the land that he speaks of for more than seven years continuously and adversely, I will charge you that that possession goes to the entire extent of the land claimed by him under deed made prior to that possession, and prior to the commencement of this action. And the evidence of that possession is that of Holafield.’ Whereupon the counsel for the plaintiff insisted that this part of his honor’s charge was erroneous: (1) Because, by the evidence of the said Holafield, his possession of the land was under Bird, and he never surrendered to said Bird, and said Bird never consented to his attornment to the defendant the Western North Carolina Land Company. (2) Because the said adverse possession of the said Holafield could not extend beyond the quantity of land mentioned and described in the paper writing from Flemming, agent of the defendant land company, to him, the limits of his said possession having been confined by said paper writing to 2% acres. (.3) Because, if the said Holafield held adverse possession in favor of the defendant land company, such possession was actual only to the extent of the said 2Yz acres, and could not be extended by construction in favor of the defendant land company to any land outside of the actual possession of the said Holafield, so as to expose said land company to the action of the plaintiff, or any one under whom the plaintiff claims. (4) The lands claimed by the defendant land company, although included in one general boundary by the deed from W. W. Flemming to the said land company, are, nevertheless, divided by specific metes and bounds into more than 70 different tracts of land; the possession of the said Holafield being on tract No. 915. Therefore the said adverse possession of the said Holafield could not extend beyond the boundary lines of said No. 915; and as to No. 915 the possession of the said land company could be no more than a constructive possession outside of said Holafield’s actual possession, and such constructive possession outside of said Holafield’s actual possession, not exposing the said land company to the action of the plaintiff, could not have the effect to mature title in the defendant land company. (5) Because said Holafield’s possession was not of that open and notorious character which can be considered sufficient to put the plaintiff, or those under whom he claims, upon notice of the claim of the said Holafield or of the defendant land company. (6) Because said Holafield’s possession was not exclusive and was not uninterrupted.”
That an imperfect title may ripen into and become in law a perfect title by reason of acquiescence in a prolonged and continuous adverse holding, and the failure of the true owner to assert his claim by entry or action, when an action will lie, is a proposition that is not disputed, and it is equally clear that the adverse possession which overcomes the legal title must be actual, open, and notorious, continuous and uninterrupted, exclusive and unequivocal. It has been strongly pressed in the argument that the omission of the presiding judge to define the nature of “adverse possession” is error. So it would have been had a request embodying the desired definition been presented in the form of a prayer for instructions. While this would have been the better practice, it would have been sufficient if an exception to the charge stating the insufficiency thereof on these grounds had been duly taken, for this would have brought to the attention of the judge, before the jury retired, the nature of the objection, and would have given opportunity to modify, enlarge, or correct his charge in respect to the matter excepted to; and Ms refusal, after his attention had thus been directed to the point, to instruct the jury fully as to the nature of an adverse possession, would have brought the subject here for review. The case has been argued as if this had been done, but an examination of the exceptions shows that they relate rather to the territorial extent of the adverse *356 possession than to the character thereof. It nowhere appears that, by exceptions or otherwise, the attention of the presiding judge was directed to this point in such a way as would enable him to see that the plaintiff desired that the jury should be specially charged as to the elements which constituted “adverse possession.” It is claimed that the fifth exception does so in substance. We cannot see that it does, and if, with the full light of elaborate .oral and printed arguments, it has not been made visible to us, we cannot hold it an error in the presiding judge that he failed to see it. On this point, therefore, the exception cannot be sustained. In other respects we are of opinion that this exception must be sustained. Holafield entered into possession under Bird, who claimed title by virtue of an entry which we understand by the laws of North Carolina is a conditional contract of purchase ‘from the state. It was claimed that Bird’s title was not perfected by actual purchase, and the state sold to W. W. Flemming, and by grant No. 915 conveyed title to him. The tract of land embraced in No. 915 having been subsequently conveyed to the defendant land company by deed which embraced many other grants, the agent of this company leased to Holafield “the two pieces of land near his house, containing about acres, known as the Tract Cleared by David Bird.’” The 2-£ acres thus described were inclosed by a fence, and afterwards—but at what time the testimony does not disclose—additional land, to the extent of six acres in all, was taken into cultivation and actually occupied by Holafield. It is to such possession that the charge relates which is ’.the subject of this exception, and is in these words:
“I will charge you that that possession goes to the entire extent of the land ■claimed by him under deed made prior to that possession, and prior to the commencement of this action. And the evidence of that possession is that of Holafield.”
We are of opinion that the charge was. indefinite and misleading, ,and that the exceptions sufficiently pointed out the objections. The effect of Holafield’s attornment to the land company without surrendering to Bird under whom he entered; the question of the -extent of Holafield’s adverse possession,—whether it was limited to the quantity of land mentioned and described in the paper writing from Flemming, the agent of the land company, and whether or not the alleged adverse possession of the land company outside the limits of the land actually occupied by Holafield was or not such a merely constructive possession as not to expose the land company to an action, and, therefore, not of a character to mature title; whether the possession of a minute portion of land in a territory embracing over 70,000 acres lying in a wild and mountainous region was of that open and notorious character which denoted an intention to usurp a possession beyond the boundaries actually occupied, and therefore such as required that an owner of reasonable diligence and ordinary vigilance should assert his title by action or otherwise; whether the alleged settlement of other parties within those boundaries is consistent with the claim of exclusive and unequivocal possession, which is ner *357 essary in order to ripen an imperfect into a perfect title,—all of these were questions pertinent to the issue, and they were not covered by the charge. The plaintiff was entitled to instructions-upon them, and, his exceptions having brought them to the notice of the court, its failure to charge the jury upon them was error.
Considering the far-reaching consequences of the verdict of the jury upon the question of the adverse possession of Holafield; that the testimony relating to such possession was not introduced until late in the trial, after many days had been devoted to other, and. what were apparently regarded as more important, issues; that the distance of the locus in quo from the place of trial furnished some excuse, under the circumstances, for the failure to establish with due definiteness the lines and locations of settlements within the disputed boundaries, the knowledge of which is essential to the doing of exact justice between the parties,—we are of the opinion that the case is one which would with propriety justify, and should in justice require, this court to exercise that discretion which its eleventh rule allows in its concluding words, “but the court, at its option, may notice a plain error not assigned.” So, even if we were in doubt whether the exceptions did in due form assign the errors complained of, we would feel ourselves impelled to exercise that option, which is to be rarely and reluctantly invoked, and notice the plain errors and omissions in the charge of the presiding judge. It is but simple justice to the memory of that learned and conscientious judge, who has since passed away, to say that such errors were due to the strain of a long and fatiguing-trial, and perhaps to the omissions of counsel, due to the same-cause. We are of opinion that a new trial should be granted, and. it is so ordered.