## JARRETT ET AL. v. ELLIS.

[No. 23,985. Filed December 11, 1923.]

1. WILLS.—*Contest of.*—*Grounds for.*—*Statute.*—Under §3154 Burns 1914, there are only two grounds for contesting a will: (1) the unsoundness of mind of the testator; (2) the undue execution of the will; duress and fraud not being additional grounds, but are merely instances under the second ground. p. 689.

2. WITNESSES.—*Competency.*—*In Will Contest.*—In an action to contest a will, neither the plaintiff nor any of the beneficiaries under the will are competent witnesses to testify to anything which occurred prior to the death of the testator, except on the issue of his unsoundness of mind. p. 690.

3. WILLS.— *Undue Influence.*— *Evidence.*— *Sufficiency.*— In an action to contest a will, evidence *held* insufficient to sustain a finding of undue influence. p. 692.

4. WILLS.—*Contest of.*—*Undue Influence and Undue Execution.*—*Withdrawal from Jury.*—In an action to contest a will, where there was no evidence that undue influence of any kind entered into the making of the will or that the will was unduly exe-

cuted in any particular, it was error to refuse to give an instruction withdrawing these issues from the jury.  p. 692.

5. WILLS.—*Contest of.—Instructions.*—Instructions must be applicable to the evidence as well as the issues, and, in a will contest, where there was no evidence of undue influence, instructions submitting to the jury the question whether or not the execution of the will was procured by undue influence should not have been given.  p. 692.

6. WILLS.— *Contest of.— Unsoundness of Mind.— Probate of Will.—Instruction.*—In an action to contest a will on the ground that the testator was of unsound mind, an instruction to the effect that the record of the probate of the will (which had been introduced in evidence) should not be considered as tending to prove the sanity or insanity of the testator at the time the will was executed, was not error.  p. 693.

7. WILLS.—*Contest of.—Testatmentary Capacity.—Instruction.* —In an action to contest a will on the ground of the mental unsoundness of the testatrix, an instruction which undertook to define testamentary capacity and included a reference to the capacity of the testatrix to comprehend "the nature of the claims of her daughter, whom she excluded from participating in her property," invaded the province of the jury by assuming that the daughter had "claims" on the testatrix which were not satisfied by the provisions of the will, as the law does not presume the existence of any claim of a daughter to share in her mother's estate which limits the mother's right to will it all to another.  p. 693.

8. WILLS.—*Contest of.—Belief of Testatrix as to Mistreatment by Daughter.—Evidence as to being Unfounded.*—There is no presumption that a daughter did not mistreat her mother (the testatrix, who had disinherited the daughter), in the particulars in which the mother believed she had, which can support an inference that such belief grew out of an insane delusion without affirmative proof that it had no foundation in fact and was prompted by a delusion.  p. 693.

From Hamilton Circuit Court; *Ernest E. Cloe,* Judge.

Action by Jennie Jarrett Ellis against Robert L. Jarrett and another to contest a will.  From a judgment for plaintiff, the defendants appeal.  *Reversed.*

*Roy W. Adney, Ben M. Scifres* and *Thomas E. Kane,* for appellants.

*Albert C. Pearson, Floyd G. Christian* and *Ralph H. Waltz,* for appellee.

EWBANK, J.—This was an action to contest the will of Nancy Margaret Jarrett, by which she devised and bequeathed all of her property to her husband, the appellant Jarrett, who conveyed some of the land to his coappellant. Appellee is the only daughter of the testatrix and appellant Jarrett. The will had been admitted to probate in October, 1916, almost three years before the action was commenced. The only error assigned is overruling the motion for a new trial under which appellant challenges the giving of certain instructions, the refusal of certain others, and the sufficiency of the evidence. The complaint alleged that: · (1) the testatrix was mentally incapable of making a will; (2) that the instrument was unduly executed; and (3) that the testatrix was induced to sign it by threats and undue influence.

As read in evidence, the will purported to have been duly executed with proper legal formalities and to have been duly proved and admitted to probate, and

1. each of the subscribing witnesses testified at the trial of this case that the testatrix signed it in their presence, and that they both subscribed it as witnesses in her presence, at her request. There was no evidence to the contrary. The court refused to give an instruction asked by appellants to the effect that there was no evidence that the will was unduly executed, and that the issue of its alleged undue execution was withdrawn from the jury. Seventy years ago, in construing a statute (2 R. S. 1852 p. 317, §39) reading substantially the same as the one in force when the judgment appealed from was rendered (§3154 Burns 1914, Acts 1911 p. 325), the Supreme Court of Indiana said that there were only two statutory causes for contesting a will: (1) the unsoundness of mind of the testator; and (2) the undue execution of the will; and

that duress and fraud were not additional causes, but were merely examples under the second head, which construction has ever since been adhered to. *Kenworthy* v. *Williams* (1854), 5 Ind. 375, 377; *Clearspring Township* v. *Blough* (1909), 173 Ind. 15, 24, 88 N. E. 511; *Barr* v. *Sumner* (1915), 183 Ind. 402, 408, 107 N. E. 675.

Appellants insist that there was no evidence that the execution of the will was induced or procured by fraud, threats, duress or undue influence, and complain

2. of the trial court's refusal to give another requested instruction to that effect. Appellee seeks to meet this contention by pointing out that there was documentary evidence and evidence given by witnesses competent to testify on the issue of undue influence as follows: That in 1898 the parents of testatrix conveyed to her thirty acres of land, which included twenty acres that she owned at the time of her death, by a deed which recited a consideration of $1,400, and her father testified that her husband (appellant) bought forty acres of "this farm" on which they lived, and he (the father) "gave her twenty acres"; that appellee was the only child of testatrix and appellant Jarrett; that the will left all the property of testatrix to her husband, including said twenty acres, and directed that he act as executor without inventory or bond, and did not mention appellee, the daughter; that after the suit to contest the will had been commenced, in an attempt to induce appellee to dismiss the action, appellant Jarrett said to her that the will "was her mother's own work," that it would be impossible to break it, and that she ought to let him have the use of the property for his lifetime, and offered to agree that, at his death, each of appellee's two children should receive a thousand dollars. Neither appellant Jarrett nor appellee was a competent witness, on any issue except the issue of un-

soundness of mind, to testify to anything which occurred prior to the death of the testatrix if a proper objection were interposed. *Wiley* v. *Gordon* (1914), 181 Ind. 252, 259, 104 N. E. 500; *Kennedy* v. *Kennedy* (1922), 192 Ind. 353, 136 N. E. 557, 558; §522 Burns 1914, §499 R. S. 1881.

Appellee also relies on the following testimony given by appellant Jarrett as tending to prove undue influence. That two days before the will was made, appellant Jarrett and his son-in-law, appellee's husband, had a quarrel over the refusal of the son-in-law and his father to pay any part of a certain note that all three of them had signed, when appellant started to get out of a buggy in which he was seated and, as he went, picked up a revolver that was in the front end, when testatrix "grabbed hold of the revolver", and a bystander seized appellant's arms; that, about the same time, testatrix said to her husband that he had made a will bequeathing her everything he owned, and she would make one and will him all that she had; that on Monday, following the quarrel with the son-in-law on Saturday, testatrix rode in a buggy with her husband to the town of Sheridan, stopping to talk with her father on the way, and at Sheridan that day, the will was made; that after they reached home that night, she gave the will to her husband, telling him to put it with his will and take care of it, and he put it in a safe deposit box they had at the bank.

The undisputed evidence also was to the effect that on the way to Sheridan the day the will was made, when the testatrix stopped at the home of her father, she asked his advice about making a will in favor of her husband, when she seemed to be angry with her daughter as well as her son-in-law, and asked if he (the father) cared if she made a will devising the land to her husband, and the father answered that the land

had passed from his control, and was not under his con-
trol; that her husband left testatrix at the home of her
aunt in Sheridan, and drove away, on matters of busi-
ness, and was not present when the will was drawn
nor when it was executed and did not see her again
until after that was done; that she went alone to the
office of a lawyer in Sheridan that forenoon, and told
him she wished to will her property to · her husband,
and he wrote the will, when she took it and went away,
saying that she wished to show it to her aunt; that in
the afternoon she returned, accompanied by her cousin,
when she signed the will, and the cousin and the lawyer
signed it as witnesses; that she was not nervous nor ill
at ease, and said nothing about the trouble between her
husband and the son-in-law.

The foregoing evidence, which includes all that has
been pointed out by counsel for appellee as having any
tendency to show the exercise of duress, threats,
3.    or undue influence of any kind, was not sufficient
to sustain a finding that the execution of the will
was not the voluntary act of the testatrix, or that it
was induced and procured by unlawful means.

There being no evidence that fraud, threats, duress or
undue influence of any kind entered into the making of
the will, it was error to refuse to give an instruc-
4.    tion withdrawing the issue of undue influence
from the jury. And there being no evidence that
the will was unduly executed in any other particular,
it was also error to refuse an instruction withdrawing
the issue of undue execution.

The court gave seven instructions asked by appellee
and four on its own motion which expressly submitted
to the jury the question whether or not the exe-
5.    cution of the will was procured by undue in-
fluence. There being no evidence of undue
influence these instructions were misleading and should

not have been given.   Instructions must be applicable to the evidence as well as the issues.

Appellant complains of an instruction to the effect that the record of the probate of the will should not be considered as tending to prove the sanity or insanity of testatrix at the time she executed the will, an instruction that plaintiff had the burden of proof having been given.   This was not error. *Bradley* v. *Onstott* (1914), 180 Ind. 687, 693, 103 N. E. 798; *Summers* v. *Copeland* (1890), 125 Ind. 466, 471, 25 N. E. 555.

An instruction which undertook to define testamentary capacity referred to the capacity of testatrix to comprehend, among other things, "the nature of the claims of her daughter, whom she excluded from participating in her property."   This invaded the province of the jury by assuming that the daughter had "claims" on the testatrix which were not satisfied by the provisions of the will.   The law does not presume the existence of any claim of a daughter to share in her mother's estate, which necessarily limits the mother's right to will it all to the father.

Some of the beliefs which testatrix was shown to have entertained were not proved by any evidence whatever to have been unfounded, but, so far as the evidence discloses, may have been true.   There is no presumption that a daughter did not mistreat her mother in the particulars in which the mother believed she had, which can support an inference that such belief grew out of an insane delusion, without affirmative proof that it had no foundation in fact and was prompted by a delusion.

For the reasons stated the judgment must be reversed and a new trial ordered.   Therefore we shall not examine the evidence to determine whether or not it would support a finding that the testatrix had an insane delu-

sion of any kind which controlled the disposition of her property by will, or was otherwise of unsound mind. Such an examination would unduly extend this opinion, and the evidence on both sides may be supplemented when the case is tried again.

The judgment is reversed, with directions to sustain the motion for a new trial.