LOVE *v.* HARRIS ET AL.

[No. 18,787. Filed June 20, 1957.]

*Peterson* & *Ervin* of Hartford City, for appellant.

*Brown* & *Shadle,* of Marion, and *Albert W. Ewbank,* of Indianapolis, for appellees.

PFAFF, J.—This action was brought by the individual appellees against the appellant and the appellee bank as administrator with the will annexed to contest the will of William Luther Cranston, who died on June 18, 1953, and which will was admitted to probate on June 26, 1953. Under the provision of this will, the individual appellees, who are nieces of the deceased, were given $100 each, and appellant, who was a neighbor, was given the residue of the estate.

For convenience, whenever the word "appellees" is used hereinafter, it refers to the individual appellees only.

Trial by jury resulted in a verdict that the will was invalid and not the last will and testament of the decedent. Judgment was entered on the verdict and appellant's motion for a new trial was overruled. The overruling of this motion is assigned as error.

The complaint alleges that at the date of the execution of the will the decedent was of unsound mind and incapable of making a will and that the pretended will was unduly executed.

Appellant assails the verdict as not sustained by sufficient evidence and as contrary to law for lack of evidence.

There was evidence of the following facts: Decedent, an elderly man, had lived with his twin brother and a sister on a farm located in Washington Township,

Grant County, Indiana. They predeceased him, and he continued to live on the farm. He was very dirty, filthy, grimy, unshaven, and his hair was long, shaggy, tangled and seldom cut. His clothes were extremely dirty. The day bed where he slept was filthy. Dogs, geese and chickens had the run of the house. There was a hog wallow about ten feet from the well. Some of the windows were broken and boarded up. Lay witnesses expressed the opinion that decedent was of unsound mind over a period of many years, including the date of making the will. He was childlike, simple, stupid, confused, rambling in his conversation and easily impressed and influenced. If "kidded" and told stories he would do anything he was told to do. He liked to talk of coon dogs and hunting. Frequently he failed to recognize acquaintances and relatives.

Clessie Davidson, a tenant on decedent's farm, paid cash rent and had paid to March 1, 1950, which is the date of the execution of the last will and testament of the decedent, William Luther Cranston. On February 28, 1950, the tenant went to decedent and told decedent he would be back the next morning to take him to the bank and give him another check. Appellant's husband was present on this occasion. The tenant went back on March 1, and found decedent was gone. He found decedent in town in front of the home of Chester Marley, the man who was named as executor, in company with Marley and appellant's husband. The tenant asked appellant's husband why he had taken decedent to town, and appellant's husband stated that decedent was sick and needed a doctor. Decedent said nothing. Marley and appellant's husband went to the office of a lawyer, who had not known decedent before. Marley told the lawyer that decedent wanted to make a will. The lawyer testified that decedent "was a man that didn't seem to talk to anybody, especially strangers."

He stated that he started to talk to decedent and discovered that decedent couldn't talk very plain and so he asked the other two to tell him what decedent wanted to do with his property. They told the lawyer what to put in the will. The secretary read the will to decedent. The lawyer then asked if that was what he wanted and decedent nodded his head. The lawyer testified that decedent claimed he couldn't write his name (although there is evidence that decedent from time to time signed various checks) and the lawyer's secretary wrote decedent's name on the will while decedent touched the pen. Appellant's husband paid the fee for drawing the will, and it was turned over to him. Marley and appellant's husband were present at all times in the lawyer's office.

The following day decedent stated to a niece, Pheba Colyer, one of the appellees, that he had "fixed" his tenant, Davidson, on the farm; that he had paid the lawyer $60 to have him thrown off. Decedent was taken to the lawyer's office by appellant's husband on other occasions after March 1, 1950, and an ejectment suit was actually filed against the tenant, Davidson, on March 23, 1950, and later dismissed.

The record further shows that on July 10, 1950, the appellant's husband, LeRoy E. Love, filed a petition for the appointment of a guardian for decedent alleging that he was incapable of managing his affairs by reason of old age and infirmity, and on July 25, 1950, the appellee, Marion National Bank of Marion, Indiana, was duly appointed guardian of said decedent.

In *Workman* v. *Workman*, 113 Ind. App. 245, at page 267, 46 N. E. 2d 718, this court, speaking through Judge Royse, said:

"In order to determine whether or not there was any evidence to support the allegation of undue influence, we must first determine what constitutes undue influence, and second, the kind and quantum of evidence necessary to sustain such an allegation.

"Undue influence necessarily involves a state of mind. It is a thing that is insubstantial. It may be brought about by either mental or physical coercion, fear, a desire for peace, or a feeling which one is unable to resist. The courts have used different phraseology in defining it, but the theory has been generally the same.

"Page on Wills, Vol. 1, §184, says: 'The theory which underlies the doctrine of undue influence is that testator is induced by various means, to execute an instrument which, although his, in outward form, is in reality not his will, but the will of another person which is substituted for that of testator. Such an instrument is, in legal effect, not a will at all. Although executed by testator, his intention to make a will is so defective that the instrument is invalid.'

"Because undue influence necessarily involves an operation of the mind, usually the evidence to establish it is circumstantial. It is generally resorted to stealthily and with an intent on the part of the person or persons exercising it to conceal their motive and intent. Page on Wills, Vol. 2, §811, says: 'From the nature of undue influence, from the fact that it is frequently employed surreptitiously, that it is shown chiefly by its results, and that, in any event, the question is usually one of the effect of a long course of conduct upon the mind of the individual in question, the evidence by which undue influence is established is usually circumstantial.

Undue influence is essentially a question of fact. *The party who contests the will is entitled to the benefit of all inferences of fact which may be deducted fairly and reasonably, from the direct evidence.* Direct evidence is necessary only to establish the facts from which undue influence may reasonably be inferred. Although each fact by itself may be insufficient, the facts when taken together may justify, and even require, a finding of undue influence.' (Our italics).

"In the case of *Davis, Executor, et al.* v. *Babb et al.* (1921), 190 Ind. 173, 179, 180, 181, 125 N. E. 403, our Supreme Court, in considering the question of undue influence, said: 'The sufficiency of the evidence to sustain a verdict on appeal depends solely on the presence in the record of some com-

petent evidence which tends to support that verdict. (Citing authorities.) In determining whether the evidence is sufficient to sustain the verdict of the jury, this court will consider, not only the positive testimony of the witnesses, but also such inferences as flow naturally from established facts. . . . The issue of undue influence joined in this case, like other questions, must be determined from all the facts and circumstances given in the evidence. The ultimate inference of undue influence, or its absence, was one of fact to be drawn by the jury, and not to be declared by the court as a matter of law. The exercise of undue influence may be shown by circumstantial evidence, and the provisions of the will and the circumstances attending its execution may be sufficient to warrant a finding against its validity. *Friedersdorf* v. *Lacy* (1910), 173 Ind. 429, 436, 90 N. E. 766. Such is the nature of the human mind that, when it has been habituated to the influence of another, it will yield to that influence and suffer it to have its effect, although the person in the habit of its exercise may not be present or exert it at the time an act is done. It may happen that the fruit of an evil and improper influence is born long after the influence is exerted. . . . *In the contest of a will on the ground of undue influence, the evidence required to establish the undue influence need not be of that direct, affirmative and positive character which is required to establish a tangible physical fact.* The only positive and affirmative proof required is of facts and circumstances from which the undue influence may be reasonably inferred. *Blackman* v. *Edsall* (1902), 17 Colo. App. 429, 68 Pac. 790. In the case just cited, *Blackman* v. *Edsall, supra,* the court said: "The chief complaint and contention of the proponent is that the evidence presented and upon which the jury based its verdict sustaining the charge of undue influence was insufficient by reason of its lacking in that affirmative and positive character which is claimed to be necessary. It follows from the very nature of the thing that evidence to show undue influence must be largely in effect circumstantial. It is an intangible thing which only in the rarest instances is susceptible of

what may be termed direct or positive proof. The difficulty is also enhanced by the fact universally recognized that he who seeks to use undue influence does so in privacy. He seldom uses brute force or open threats to terrorize his intended victim, and if he does he is careful that no witnesses are about to take note of and testify to the fact. He observes, too, the same precautions if he seeks by cajolery, flattery or other methods to obtain power and control over the will of another and direct it improperly to the accomplishment of the purpose which he desires." And again in the same case the court said: "Only general rules concerning the amount and character of evidence required to establish undue influence in the execution of a will can be laid down. *As to what is sufficient must depend upon the facts and circumstances of each particular case*' (Our italics.)".

With these rules in mind we have heretofore proceeded to a consideration of the evidence to determine if there be *any* evidence to sustain the allegation of undue influence in this case. See also *Haas* v. *Haas* (1951), 121 Ind. App. 335, 344, 96 N. E. 2d 116, 98 N. E. 2d 232; transfer denied; *Cahill* v. *Cliver* (1951), 122 Ind. App. 75, 79, 98 N. E. 2d 388, transfer denied. In our opinon considering the evidence and the reasonable inferences which the jury was entitled to draw therefrom, the verdict is sustained by sufficient evidence and is not contrary to law.

The judgment in this case adjudged, "that the instrument of writing bearing date of March 1, 1950, and admitted to probate by this Court on the 8th day of April, 1953, as the Last Will and Testament of William Luther Cranston, deceased, be and the same is adjudged invalid and of no force or effect, and the probate heretofore granted is hereby set aside and revoked." The will was actually admitted to probate on June 26, 1953, and the date set forth in the judgment appears to be a clerical error. Appellant, without citation of authorities, attempts to attack this judgment by specifications in

her motion for new trial, "That the judgment of the court is not sustained by sufficient evidence" and, "That the judgment of the court is contrary to law." Such specifications are not proper grounds of a motion for new trial. §2-2401, Burns' 1946 Replacement. Where a judgment does not conform to the verdict, the remedy is by a motion to modify the judgment. In *Lynch* v. *Milwaukee Harvester Co.* (1903), 159 Ind. 675, 65 N. E. 1025, our Supreme Court said:

> "The statute, in plain language, names the causes which may be deemed assigned for a new trial. It may be that, upon verdicts or findings in strict accord with the law and evidence, judgments contrary to the law and evidence are rendered. But the remedy against such errors is a motion to modify the judgment, and not a motion for a new trial."

See also Gavit, *Indiana Pleading and Practice*, §416, p. 2328; Flanagan, Wiltrout and Hamilton, *Indiana Trial and Appellate Practice*, §1781, p. 367.

Appellant waives the error, if any, in the refusal of the court to direct a verdict at the conclusion of appellees' evidence, when she thereafter introduced ▮ evidence. The motion was not renewed at the close of all the evidence. *Trent* v. *Rodgers* (1952), 123 Ind. App. 139, 104 N. E. 2d 759, transfer denied; *Taylor* v. *Fitzpatrick* (1956), 235 Ind. 238, 132 N. E. 2d 919. As stated in the latter case,

> "Appellant moved for a directed verdict at the close of appellee's evidence. The motion was overruled and appellant proceeded with the introduction of evidence on his own behalf, thereby waiving any right to have such motion considered. *Louisville & N. R. Co.* v. *Revlett* (1946), 224 Ind. 313, 65 N. E. 2d 731; *Drinkwatter* v. *Eikenberry* (1946), 224 Ind. 84, 64 N. E. 2d 399."

See also Flanagan, Wiltrout and Hamilton, *Indiana Trial and Appellate Practice*, §1661, p. 313, Comment 3.

Appellant argues that the court erred in giving the court's instruction No. 3 and appellees' instructions Nos. 2, 3, 4, 5 and 9; that the court erred in refusing appellant's instructions Nos. 5, 12, 15, 17 and 20.

The objections now urged by appellant and set forth in her brief were not made to the trial court prior to the argument. Rule 1-7, Rules of the Supreme Court, 1954 Rev., expressly provides that where objections to the giving of instructions are not so made to the trial court, they shall not be available on appeal. The purpose of the Rule is to point out errors in the instructions to the trial court so that they may be corrected and avoid the necessity of another trial. Objections made to the trial court which do not mention the point on which the appellant later relies or which are so general as not to point out any particular objection, cannot be considered sufficient to accomplish the purpose of the ruling. Appellant's objections that "an instruction does not constitute a true and complete statement of the law; that it omits certain elements (without naming them); that the instruction is ambiguous, misleading and confusing;", are not sufficiently specific to present a question. *Keeshin Motor Express Co.* v. *Sowers* (1943), 221 Ind. 440, 48 N. E. 2d 459; *Mackey* v. *Niemeyer* (1942), 113 Ind. App. 10, 44 N. E. 2d 520, transfer denied; *Powell* v. *Ellis* (1952), 122 Ind. App. 700, 105 N. E. 2d 348, transfer denied; *Tompkins* v. *Smith* (1952), 122 Ind. App. 502, 106 N. E. 2d 487; *King's Indiana Billiard Co.* v. *Winters* (1952), 123 Ind. App. 110, 106 N. E. 2d 713, transfer denied; *Huntington Post American Legion* v. *Arnold* (1952), 123 Ind. App. 160, 109 N. E. 2d 98. In *Tompkins* v. *Smith, supra,* Judge Wiltrout, speaking for this court, said:

> " 'By stating that the instruction was confusing and misleading the appellants did not make a spe-

cific objection and no question is raised. *Allman* v. *Malsbury* (1946), 224 Ind. 177, 65 N. E. 2d 106.' "

The objections to appellees' instructions Nos. 4 and 5 were not specific and no error is presented.

Appellant's objection to the court's instruction No. 3 was to the effect that if the words "is ordinary business and" were not deleted from the instruction, an untrue statement of the law would result. We do not find such words in the instruction which was given. The court's instruction No. 3 reads in part as follows:

> "If the testator, William Luther Cranston, was in possession of his mental faculties at the time of making the will in controversy sufficient to transact and know and understood the business in which he was engaged, the extent and value of his property; . . .".

Objection was made to appellees' instruction No. 9. It states that "a will is invalid if made by one laboring under partial insanity or unsoundness of mind," without specifying that such partial insanity or unsoundness of mind must be in existence and prevalent at the moment of the execution of the questioned will. Appellees' instructions No. 9 is substantially like the one which was held not erroneous in *McReynolds* v. *Smith* (1909), 172 Ind. 336, 347, 86 N. E. 1009, and we quote as follows:

> "Objection is made to instruction four of the same series. It informed the jury that to find the testator did not have capacity to make a will, it was not necessary that the evidence should show that he was a maniac, a madman, or a fit subject for the asylum, but a will is invalid if made by one laboring under partial insanity, or unsoundness of mind, if it is sufficient to, and does, affect the disposition of the property; and if the jury believed, from the evidence, that the will in controversy was made under the influence of such partial unsoundness of mind, and is the product of it, it should be held invalid.

The complaint made of this instruction is that the court failed to explain to the jury what was meant by partial insanity. The court did say that if the will was made under the influence of such partial insanity, and was a product thereof, it was invalid. The jury might reasonably infer that any degree of unsoundness was meant that was sufficient to induce or influence the making of a will in consonance with the mental disorder. This was right, or at most not erroneous. Besides, appellants could have had a more specific instruction by the asking."

In our opinion this instruction is not subject to the interpretation which appellant seeks to place upon it.

Appellees' instruction No. 2 reads as follows:

"I instruct you that undue execution includes, undue influence, duress, fraud and all other matters that go to show undue execution of the instrument in question."

*Kenworthy* v. *Williams,* 5 Ind. 375; *Reed and Another* v. *Watson and Another* (1867), 27 Ind. 443; *Willett et al.* v. *Porter et al.* (1873), 42 Ind. 250; *Bowman et al.* v. *Phillips et al.* (1874), 47 Ind. 341; *Lange et al.* v. *Dammier et al.* (1889), 119 Ind. 567, 21 N. E. 749; *Clearspring Township* v. *Blough* (1909), 173 Ind. 15, 88 N. E. 511, 89 N. E. 369; *Wiley* v. *Gordon* (1913), 181 Ind. 252, 104 N. E. 500; *Barr* v. *Sumner* (1915), 183 Ind. 402, 107 N. E. 675, 109 N. E. 193; *Jarrett* v. *Ellis* (1923), 193 Ind. 687, 141 N. E. 627; *Loeser* v. *Simpson* (1942), 219 Ind. 572, 39 N. E. 2d 945; *Potter* v. *Emery* (1940), 107 Ind. App. 628, 26 N. E. 2d 554; *Workman* v. *Workman, supra.*

The complaint in this case alleges that the will was unduly executed. "Unduly executed" is a technical legal phrase. In *Gwinn* v. *Hobbs* (1917), 72 Ind. App. 439, 462, 118 N. E. 155, this court said:

". . . The general rule seems to be that it is error for a court to refuse to define in its instructions technical or legal phrases in connection with material issues, when properly and timely requested so to do. 38 *Cyc* 1687; *Pittsburgh, etc. R. Co.* v. *Wise* (1905), 36 Ind. App. 59, 74 N. E. 1107; *Denver, etc., R. Co.* v. *Norgate* (1905), 141 Fed. 247, 72 C. C. A. 365, 6 L. R. A. (N. S.) 981, 5 Ann. Cas. 448; *Holmes* v. *Clisby* (1904), 121 Ga. 241, 48 S. E. 934, 104 Am. St. 103; *Union Scale Co.* v. *Iowa Mach., etc., Co.* (1907), 136 Ia. 171, 113 N. W. 762; *Western, etc., Land Co.* v. *Scaife* (1897), 80 Fed. 352, 25 C. C. A. 461; *Chambers* v. *Morris* (1906), 149 Ala. 674, 42 South. 549. The phrase 'undue influence,' when used in connection with the execution of wills and deeds, has a legal meaning, which is often the subject of debate among those learned in the law, and hence it could not be expected that the unprofessional men of a jury would understand what was meant by its use in such connection. It was therefore the duty of the court to instruct the jury as to its meaning. . . ."

Appellant does not question the law stated in appellees' instruction No. 2, but objected on the ground that it includes duress and fraud and that these are not involved in the issues of this case. In view of the issues formed, the evidence applicable thereto, and in consideration of other instructions given, we do not deem the giving thereof error.

Appellees' instruction No. 3 is as follows:

"You are instructed that undue influence is generally exerted by a beneficiary under the will; but this is not necessary. If you should find that undue influence was exerted by one who is not a beneficiary under the will, the will which is caused thereby is as invalid as if the influence were exerted by one of the beneficiaries, and the beneficiary may have been ignorant of the exercise of such influence."

The specific objection made to this instruction is that the elements comprising undue influence are not set

out and defined in the instruction. This is not the objection now urged by the appellant in her brief. New objections, not made in the trial court, are not available on appeal. Rule 1-7, Rules of the Supreme Court, 1954 Rev. *Sheets* v. *Voland* (1954), 124 Ind. App. 695, 701, 119 N. E. 2d 325, transfer denied; *Rickner* v. *Haller* (1953), 124 Ind. App. 369, 378, 116 N. E. 2d 525, transfer denied; Flanagan, Wiltrout and Hamilton, *Indiana Trial and Appellate Practice*, §1506, p. 231. Further, the jury was informed by other instructions as to what elements comprise undue influence.

The subject matter of appellant's instructions Nos. 5, 12, 15, 17 and 20 is fully and adequately covered by other instructions given to the jury. The argument with reference to instructions Nos. 5, 12, 15 and 20 is not supported by authorities. Therefore it was not error to refuse to give them. *Todd* v *State* (1954), 233 Ind. 594, 595, 122 N. E. 2d 343; *Armstrong Cork Co.* v. *Maar* (1953), 124 Ind. App. 105, 117, 111 N. E. 2d 82, 112 N. E. 2d 240; *Kindler* v. *Edwards* (1955), 126 Ind. App. 261, 130 N. E. 2d 491, transfer denied.

From the record, including all of the instructions given, it appears that the jury was fully and fairly instructed, that the case was fairly tried upon its merits and a proper conclusion reached.

We find no error and the judgment is affirmed.

Crumpacker, C. J., Cooper, P. J., and Bowen, Kelley and Royse, JJ., concur.

NOTE.—Reported in 143 N. E. 2d 450.